[No. B221259. Second Dist., Div. Three. Mar. 16, 2012.]

COLONY BANCORP OF MALIBU, INC., et al., Plaintiffs and Respondents, v.
MAHENDRA PATEL, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

*Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for partial publication. The portions of this opinion to be deleted from publication are those portions enclosed within double brackets, [[]].

**COUNSEL**

Nate G. Kraut for Defendant and Appellant.

Robie & Matthai, Edith R. Matthai and Natalie A. Kouyoumdjian for Association of Southern California Defense Counsel as Amicus Curiae on behalf of Defendant and Appellant.

Donna Bullock Carrera for Plaintiffs and Respondents.

**OPINION**

**KLEIN, P. J.**—Defendant and appellant Mahendra Patel (Patel) appeals a judgment in favor of plaintiffs and respondents Colony Bancorp of Malibu, Inc., a Nevada corporation, Pamela K. Cole, trustee of the Cole Irrevocable Family Trust, Manuel Meza, trustee of the Jojazak Irrevocable Children's Trust, and Robert Aronson, an individual (collectively, plaintiffs), following a court trial.

Patel's chief contention is that the trial court denied his right to due process by resuming trial after a lunch break without the presence of his defense counsel. The record reflects the trial court directed the parties to

return for the 1:30 p.m. afternoon session. Trial resumed promptly at 1:30 p.m. with neither Patel nor defense counsel being present. Plaintiffs' counsel asked seven questions of a witness on direct examination. At the end of the seventh question, defense counsel arrived. Defense counsel made no objection and the proceedings continued. Now, on appeal, Patel contends that resumption of trial after lunch, without defense counsel being present, is reversible error per se.

■ The contention is meritless. Code of Civil Procedure section 594 authorizes the trial court (provided proper notice has been given) to proceed with trial in the absence of a party, and that is what occurred here.[1] There was no due process violation.

Further, we perceive no error in any of the trial court's other rulings and affirm the judgment in its entirety.

## FACTUAL AND PROCEDURAL BACKGROUND

On September 14, 2006, this case began as an unlawful detainer action with the filing of plaintiffs' complaint. Patel thereafter vacated the premises, so that possession was no longer in issue. Plaintiffs filed the operative first amended complaint seeking damages for breach of a commercial lease of real property.

On June 8, 2009, the matter came on for a four-day bench trial. After the matter was submitted, the trial court issued a statement of decision, which we summarize as follows:

1. *Evidence at trial.*

Plaintiffs were the owners and lessors of commercial real property located at 1057 North Vine Street in Los Angeles. For many years, much of the building's leasable space was occupied by a 36-room hotel. The balance of the space was leased to several retail businesses.

On February 4, 1999, plaintiffs entered into a 10-year agreement to lease the hotel space to Dimitris Papakosmas (Papakosmas). The lease, exhibit 19, was a standard industrial/commercial multi-tenant lease. As particularly pertinent to the issues in this case, the lease specified (1) the portions of the

---

[1] All further statutory references are to the Code of Civil Procedure, unless otherwise specified.

building which were to be available for the operation of the hotel (i.e., ground floor lobby, second floor, third floor and roof); (2) the base rent; (3) the lessee's share of Common Area Operating Expenses (CAM); (4) the CAM charges, defined as "all costs incurred by lessor relating to the ownership and operation of the 'Industrial Center' " (i.e., the building housing the hotel and the building immediately adjacent to it); (5) the lessee's obligation to "keep the premises and every part thereof in good order, condition and repair . . . whether or not the need for such repairs occurs as a result of lessee's use, any prior use [or] the elements or the age" of the building; and (6) an award of attorney fees to the prevailing party in any action to enforce the terms of the lease.

On September 24, 1999, plaintiffs and Papakosmas signed an amendment to the lease whereby an additional 690 square feet of the building space was added for use as the hotel lobby in exchange for an increase in the base rent.

Patel, in conjunction with various family members and other partners, owns and operates approximately 36 hotels in the greater Los Angeles area. In 2000, Patel agreed to pay Papakosmas $250,000 to take over the lease for the hotel space. On November 7, 2000, Patel and plaintiffs executed a written assignment of the lease.

The key provisions of the assignment were (1) Patel agreed to perform all of Papakosmas's remaining obligations under the lease and (2) Patel was required to "upgrade the tenancy and appearance of the premises and shall run the property as a tourist hotel or hostel in keeping with [Patel's] other properties and not as a transient hotel."

Patel did not bother to read the lease agreement, nor did he inspect the hotel rooms before he assumed the 10-year lease.

As early as May 2001, Patel began to fall behind in his payments of rent and CAM charges. By June 2004, Patel was behind over $36,000 in payments. That month, plaintiffs agreed to waive Patel's outstanding balance, including late charges, in the amount of $36,682. But by the following month, Patel again began to fall behind in his payments. As of February 2009, Patel's outstanding balance was $679,916.

Patel failed to properly maintain the property as a tourist hotel. Unlawful drug activity and prostitution occurred on the premises.

In May 2005, the City of Los Angeles (City) cited the hotel for multiple substandard conditions. Plaintiffs put Patel on notice that he was in breach of the lease. Patel promised to repair all of the items specified by the City prior to June 17, 2005.

Patel again failed to perform as promised. In December 2005, the City determined the necessary repairs to the hotel had not been performed. On February 15, 2006, Patel was served with a three-day notice to quit. In June 2006, the City found the violations persisted. Finally, in September 2006, Patel vacated the premises.

When plaintiffs' representatives then inspected the property, they found the conditions to be "horrible." Workers filled eight dumpsters with trash and debris. The cost of the cleanup was $19,685.

After the cleanup was completed, plaintiffs hired Robert Royall of Calcanusa Construction to give an estimate for structural and cosmetic repairs. Royall concluded the hotel area had not been well maintained and was in fact "destroyed." His final estimate for repairs was $461,384.

Patel introduced evidence that some of the center's retail stores were occupied by an adult video store, a palm reader, and a church. However, the video store and the palm reader were already tenants when Patel assumed the lease, and Patel never complained in writing about any tenant.

In 2005, Patel hired a general contractor, Randy Jones, to deal with the violations specified by the City. Patel claimed he corrected all of the violations, but he produced no invoices or other business records to corroborate this testimony. Jones recalled Patel told him that he was reluctant to do many repairs to the property because it was leased and not owned.

Patel's son, Sajar Kumar (Kumar), testified he invested approximately $200,000 into the hotel property during the 2002–2004 time period in order for it to become part of the "America's Best Value Hotels" chain. Kumar claimed this was for new paint, carpet, furniture, a fire alarm and for repairs. However, no invoices or other business records were provided in support of these assertions. In any event, Kumar lost the franchise in late 2004 or early 2005. Thereafter, he had "lower-income" guests and ensuing property damage.

Kumar also claimed people were breaking into the property and causing damage. No insurance claims or other evidence of such break-ins was

offered. Kumar then testified that all the issues specified by the City had been repaired when he gave up the hotel property. Again, no repair invoices or other business records were presented to corroborate this statement.

### 2. *Trial court's legal conclusions.*

In the statement of decision, the trial court set forth its legal conclusions as follows:

This was a dispute between sophisticated business people. Patel, together with his family and other partners, owns and operates more than 30 hotels, including Holiday Inns, Comfort Inns and Econo Lodge properties. Patel became bound by the lease. Patel also undertook the added obligation under the lease assignment "to upgrade the tenancy and appearance of the premises."

It was no defense to claim at trial that Patel did not bother to read the lease. Nor was it a defense that the hotel property may have had some damage at the time Patel assumed the lease. The lease required written notice of such problems and none was given here. It was also not a defense that Patel lost his hotel franchise, that guests damaged the property, that nonguest "vandals" damaged the property, or that business dropped off because of the other retail operations in the center. "The short answer is that Mr. Patel agreed to maintain and repair the property and he did not do so."

The trial court concluded, "Patel made an economic decision not to repair or maintain the property. Further, the Court concludes that part of Mr. Patel's decision was that it was cheaper to abandon the hotel property and then seek to wear out plaintiffs with years of protracted litigation." The trial court found plaintiffs met their burden of proving that Patel breached the terms of the lease and the lease assignment.

With respect to damages, the trial court determined plaintiffs were entitled to back rent, CAM charges, late fees and cleanup costs in the amount of $679,916. Further, plaintiffs were entitled to their reasonable costs to repair the hotel property after it was vacated by Patel in September 2006. The trial court found Royall's $460,000 estimate, on behalf of plaintiffs, was unreasonable. The trial court found the reasonable material and labor costs to repair the property would be $214,000.

Based thereon, the trial court entered judgment for plaintiffs in the total amount of $893,916, plus attorney fees, costs and prejudgment interest. The trial court subsequently awarded plaintiffs $121,411 in prejudgment interest, $83,850 in attorney fees and $5,640 in costs, to be added to the judgment.

Patel filed a timely notice of appeal from the judgment.

## CONTENTIONS

Patel contends by directing plaintiffs' counsel to resume the direct examination of plaintiffs' key witness while defense counsel was not present, the trial court deprived Patel of his constitutional right to be represented by retained counsel of his choice at all stages of the trial; the trial court deprived him of a fair trial by prohibiting him from introducing evidence on viable theories of the case, i.e., that plaintiffs breached the implied covenants of quiet enjoyment and good faith and fair dealing, and that Patel actually overpaid rent and CAM charges; by rushing to conclude the trial, the trial court denied Patel his constitutional right to a fair trial; the trial court's abuses of discretion denied him a fair trial, making the judgment reversible per se; even if a harmless error analysis were applicable, the judgment is still subject to reversal; and if the judgment is reversed, the awards of attorney fees, prejudgment interest and costs must also be set aside.

## DISCUSSION

1. *Trial court properly resumed trial after lunch break without waiting for defense counsel, who was tardy; Patel's claim of a due process violation is meritless.*

 a. *Proceedings.*

The bench trial in this matter commenced on the morning of Monday, June 8, 2009. Patel was not present in court that day, but was represented by his attorney, Thomas Gray. There was a lunch break at noon, and the trial court ordered the parties back at 1:30 p.m. to complete the examination of Clifford Cole (Cole), a witness called by plaintiffs.

Following the lunch break, trial resumed. The trial court inquired of plaintiffs' counsel: "Where is your witness?" Plaintiffs' counsel responded, "He's standing outside the door."

The trial court stated, "Let's bring him in and have him resume the witness stand. Sir, have a seat. [¶] Have we seen defense counsel?"

The court assistant replied, "I haven't." The trial court then stated to plaintiffs' counsel, "You may resume."

Plaintiffs' counsel then asked the witness seven questions on direct examination.[2]

After the witness responded to the seventh question, the trial court stated: "The record should reflect Mr. Gray [defense counsel] has now arrived late. We start on time, Mr. Gray."

Plaintiffs' counsel then resumed the direct examination of the witness.

### b. *The contentions of Patel and amicus curiae.*

Patel contends that by directing plaintiffs' counsel to resume the direct examination of a key witness while defense counsel was not present, the trial court deprived Patel of his constitutional right to be represented by retained counsel of his choice at all stages of the trial. Patel asserts the trial court should have waited for defense counsel to arrive, or could have directed the courtroom clerk to call defense counsel, or could have imposed a monetary sanction for counsel's tardiness.

Amicus curiae Association of Southern California Defense Counsel (Association),[3] in support of Patel, asserts the trial court's decision to proceed with trial and to permit plaintiffs to examine a key witness while defense counsel was absent, denied Patel a fair trial and interfered with the attorney-client relationship, amounting to reversible error per se.

### c. *Trial court was not required to await defense counsel's arrival; it had the authority to resume trial promptly after the lunch break.*

The absence of Patel and his attorney following the lunch break did not preclude the trial court from proceeding with the matter. Section 594 states in

---

[2] The seven-question colloquy between plaintiffs' counsel and the witness was as follows:

"Q. Now, I had just asked you to refer to exhibit no. 89, which I will show you again. Do you recognize that document?

"A. Yes.

"Q. What is it?

"A. This is the 2005 C.A.M. Reconciliation. That's the year-end reconciliation of all the expenses for the building.

"Q. And what was the tenant's share of the C.A.M. charges for 2005 under that document?

"A. 50 percent under the lease for all years.

"Q. What was the actual dollar amount?

"A. The total C.A.M. expenses was $128,421.98, and their portion is 50 percent of that.

"Q. All right. Now, that document has back-up documentation to it, doesn't it?

"A. Yes, it does.

"Q. And what types of back-up documentation is attached to exhibit 89?

"A. It's actually copies of all of the bills to substantiate the C.A.M. charges or expenses for the building.

"Q. Was that pass-through expenses?

"A. Pass-through expenses. Thank you."

[3] Pursuant to California Rules of Court, rule 8.200(c), this court granted the Association's application to file an amicus curiae brief in support of Patel.

pertinent part at subdivision (a): "In superior courts either party may bring an issue to trial or to a hearing, *and, in the absence of the adverse party*, unless the court, for good cause, otherwise directs, *may proceed with the case and take* a dismissal of the action, or *a verdict, or judgment, as the case may require*; provided, however, if the issue to be tried is an issue of fact, proof shall first be made to the satisfaction of the court that the adverse party has had 15 days' notice of such trial . . . ." (Italics added.)

█ Formal notice of trial is not an issue because Patel appeared through counsel at the commencement of trial on the morning of June 8. (*Parker v. Dingman* (1975) 48 Cal.App.3d 1011, 1016 [122 Cal.Rptr. 309].) Further, "[a]ctual notice, however acquired, is sufficient." (*Ibid.*) Here, Patel's counsel had actual notice the trial would resume at 1:30 p.m., following the lunch break. Therefore, the trial court had the authority to proceed with the matter in the absence of Patel and his counsel.

### d. *No objection by Patel.*

Patel's chief contention on appeal is that the trial court received testimony of a plaintiffs' witness without defense counsel being present. However, upon defense counsel's belated return to the afternoon session on June 8, he did not assert any objection that questioning of the witness had begun in his absence.

We are also mindful this was a bench trial, not a jury trial. Had defense counsel made a timely objection below, the matter easily could have been handled at that time, and the trial court would have had the opportunity to determine whether any curative action was appropriate. Further, defense counsel merely was absent for a very brief portion of the witness's *direct* examination. Nothing precluded defense counsel from exploring those issues with the witness on cross-examination.

### e. *No showing of prejudice.*

The brief colloquy which occurred in defense counsel's absence is set forth in its entirety at footnote 2, *ante.* Said testimony laid the foundation for the admission of exhibit 89. Thereafter, when plaintiffs moved to admit exhibit 89 into evidence, Patel had no objection thereto. Therefore, Patel cannot show he was prejudiced by his counsel's very brief absence from the afternoon session on the first day of trial.

### f. *Case law cited by Patel and amicus curiae is inapposite.*

Patel relies heavily on *Oliveros v. County of Los Angeles* (2004) 120 Cal.App.4th 1389 [16 Cal.Rptr.3d 638] (*Oliveros*). In that case, prior to trial of a complex medical malpractice action, the parties identified 43 trial witnesses, including 18 designated experts. The defendant county requested a continuance because its attorney, one Peterson, was engaged in another matter, and no other attorney in Peterson's firm was prepared to try the case.

The trial court refused to grant the continuance and required the defendant to proceed with another attorney. (*Id.* at pp. 1391–1393.)

*Oliveros* held the trial court abused its discretion in denying a continuance and reversed the judgment, stating: "Due to a series of circumstances beyond his immediate control, the County's lawyer found himself engaged in trial in another courtroom on July 9, the trial date in this case. He sought a continuance, not because he was unprepared for trial, or because he sought a technical advantage by delaying trial, or for any other suspect reason. Rather, he was ordered to trial in another courtroom, and he could not be in two places at one time. Contrary to the judge's finding, the County presented good cause for a continuance. Again, we emphasize that, whatever counsel's shortcomings in managing his schedule, it is the rights of the client, not the lawyer, which are at stake here, and there is no showing that the County did anything to warrant the result reached in this case." (*Oliveros, supra*, at p. 1400.)

*Oliveros* has no application to the instant fact situation, in which Patel and his attorney were not present at the resumption of trial following a lunch break and no attempt was made to notify the court that defense counsel was running late.

Amicus curiae also cites *Gonzalez v. Commission on Judicial Performance* (1983) 33 Cal.3d 359, 371 [188 Cal.Rptr. 880, 657 P.2d 372], a judicial misconduct case. One of the findings therein was that Judge Gonzalez overreached and abused his judicial authority in that on three occasions he conducted court proceedings in the absence of counsel for one or both of the parties. (*Id.* at p. 371.) All those incidents involved *criminal* proceedings (*id.* at p. 367), to which section 594 does not apply. Therefore, the *Gonzalez* decision is unavailing to Patel.

### g. *Conclusion.*

For all the reasons set forth above, we reject Patel's contention the trial court committed reversible error by resuming trial after the lunch break without waiting for defense counsel to arrive.

[[]]*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*See footnote, *ante*, page 410.

## DISPOSITION

The judgment is affirmed in its entirety. Plaintiffs shall recover their costs on appeal.

Croskey, J., and Kitching, J., concurred.