Filed 12/2/25  Marriage of Gong CA4/3

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| In re the Marriage of HSUEHLING PHOEBE and THOMAS LEE GONG. | |
| HSUEHLING PHOEBE GONG,<br><br>    Respondent,<br><br>        v.<br><br>THOMAS LEE GONG,<br><br>    Appellant. | G064288<br><br>(Super. Ct. No. 18D004106)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Israel Claustro, Judge. Affirmed. Appellant's motion to augment the record on appeal is denied.

The Blonska Firm and Jason A. Blonska for Appellant.

Law Offices of Lisa R. McCall, Lisa R. McCall and Erica M. Barbero for Respondent.

\*          \*          \*

In May 2018, respondent Hsuehling Phoebe Gong (Phoebe) filed a petition for dissolution of marriage from appellant Thomas Lee Wong (Thomas). After filing a response, Thomas did not participate in any further proceedings (e.g., cooperating with discovery requests, making trial court appearances, obeying court orders, etc.).

In September 2020, during the period of the COVID-19 pandemic, Thomas did not appear for a remote trial. The trial court found Thomas had received notice, and his "absence is consistent with his failure to respond on numerous occasions." The court entered a judgment, which included an order for Thomas to pay spousal support to Phoebe.

In August 2022, Thomas moved to set aside the judgment. (See Code Civ. Proc., § 473, subd. (d) ["The court . . . *may*, on motion of either party after notice to the other party, set aside any void judgment or order"], italics added.) [1] Thomas alleged that the judgment of dissolution was void because he did not receive written notice of the trial date. (See § 594.) Thomas also alleged that Phoebe threatened to disclose personal information about him if he participated in the legal proceedings. (See Fam. Code, § 2122 [a trial court may set aside a judgment of divorce based on duress].)

After Thomas and a court clerk testified at an evidentiary hearing, the trial court denied Thomas's motion to set aside the judgment. The court found that Thomas had received actual notice of the trial date and found no evidence to support his claim of duress. Thomas appeals.

We find that the trial court did not abuse its discretion. Thus, we affirm the court's denial of Thomas's motion to set aside the judgment.

---

[1] Further undesignated statutory references are to the Code of Civil Procedure.

2

# I.

## FACTS AND PROCEDURAL BACKGROUND

On May 15, 2018, Phoebe filed a petition for a dissolution of marriage. Thomas and Phoebe had been married for 19 years, and they had three adult children. Phoebe requested that Thomas be ordered to pay spousal support. Phoebe was represented by counsel.

On June 22, 2018, Thomas filed a response to the petition. Thomas requested that Phoebe be ordered to pay spousal support to him. Thomas was represented by counsel.

On December 5, 2018, Phoebe filed a declaration of income and expenses. Over the next few months, Phoebe filed several documents with the trial court including a motion to compel discovery (specifically, a declaration of Thomas's income and expenses).[2]

On June 21, 2019, the trial court ordered Thomas to file a preliminary declaration and to appear in court on August 30, 2019.

On August 16, 2019, the trial court filed an order granting a request by Thomas's counsel to be relieved as counsel of record. The order noted Thomas's last known address and telephone number.

On August 30, 2019, the trial court conducted a hearing on Phoebe's motion to compel discovery. Thomas did not appear. The court ordered Thomas to pay $3,000 in sanctions (for failing to appear and for failing to file a preliminary declaration).

On November 26, 2019, the trial court conducted a trial setting conference. The court found that Thomas failed to appear after having

---

[2] All documents and trial court orders throughout this summary were supported by an appropriate proof of service upon Thomas.

previously been served with notice of the hearing date. The court scheduled a mandatory settlement conference for January 9, 2020.

*The Setting of the Trial Date*

On January 9, 2020, the trial court conducted a mandatory settlement conference. Thomas failed to appear. Phoebe's counsel told the court that Thomas "does not show up to anything." The court set a trial date for March 19, 2020.

On March 12, 2020, Phoebe filed a trial brief, which requested, in part to "move forward to . . . provide the finality of Judgment. [Phoebe] has provided timely notice to [Thomas] of all aspects of this Dissolution in order to provide him with the due process of 'Notice and the Opportunity to be Heard.' [Phoebe] will request to move forward to trial notwithstanding the anticipated non-appearance of [Thomas] on the presently set trial date of March 19, 2020, even if [Thomas] refuses to participate."

On March 18, 2020, the trial court sent notice to the parties and Phoebe's counsel that the trial date was continued from March 19, 2020, to June 8, 2020.

On May 11, 2020, Phoebe filed with the trial court a notice to Thomas of the trial date and a copy of the court rule regarding the requirement of parties to file a trial brief. (Cal. Rules of Court, rule 5.394 [a trial brief generally must be filed five days prior to trial].)

On June 8, 2020, Thomas failed to appear for the remote trial. The minutes indicate that the trial court was unable to contact Thomas by phone and left a voicemail. Phoebe's counsel requested that the court continue the trial for 30 days. The court continued the trial to July 23, 2020.

On June 10, 2020, Phoebe filed a notice of the trial date (July 22,

2020), which was served on Thomas by mail (this date was in error).

On July 23, 2020, the trial court's minute order states: "**The Court orders this matter continued to September 16, 2020 at 1:30 PM in Department L64 via Teams with a 2 hour time estimate**. [¶] Due to the Court's unavailability, matter is continued under the direction of the court as indicated above. [¶] Parties notified telephonically. [¶] Remote hearing shall serve as notice."

On September 15, 2020, Phoebe filed an updated income and expense declaration. Phoebe provided proof of electronic service (via e-mail with two e-mail addresses noted).

*The Dissolution Trial*

On September 16, 2020, the trial court proceeded with a remote trial via Microsoft Teams. The court inquired of Phoebe's counsel, "have you heard from Mr. Gong?" Counsel responded, "I have not, Your Honor. We have sent him, as late as yesterday, via e-mail, a copy of [Phoebe's] most recent Income & Expense Declaration which we've provided the Court yesterday. [¶] I have not heard from him despite calls and communications to him over time. In fact, he has never appeared in the action." The court stated: "That's what I gathered."

"It's 1:37 p.m. And the Court has reviewed its record and finds that Mr. Gong duly had notice of this hearing -- stand by. [¶] Yes. [¶] -- and [his] absence is consistent with his failure to respond on numerous occasions to this litigation." The court noted that it did not have an income and expense declaration for Thomas. "Nevertheless, what we'll do then, Counsel, is if you agree, we'll go ahead and swear in Ms. Gong. We'll go ahead and -- you'll present your case, your requests; and the Court will go ahead and proceed in

5

his absence."

Phoebe testified on direct examination and 27 exhibits were entered into evidence. Argument was offered as to spousal support and the division of property. The trial court granted the judgment of dissolution. The court ordered Thomas to pay spousal support of $1,500 per month and attorney fees of $32,000. "Court allows counsel to submit the judgment directly to the court and send a copy to [Thomas] without waiting for signing or objection based on the documented history and failure of [Thomas] to participate."

On September 24, 2020, Phoebe filed the dissolution judgment, with an attachment that summarized the trial court's findings and orders.

*Posttrial Proceedings*

On June 23, 2021, Thomas filed with the trial court a notice of substitution of counsel.

On August 24, 2022, Thomas filed a motion to set aside the September 2020 judgment. Thomas argued that the judgment was void because he was not properly served: "I did not receive the required, written fifteen (15) days' notice of the September l6, 2020, trial date and the matter proceeded in my absence." (§ 594, subds. (a) & (b).) Thomas also argued that he was subject to duress. (Fam. Code, § 2122 et seq.) Thomas stated: "Shortly after filing my Response, [Phoebe] threatened to 'out' me to my three (3) adult sons, family, friends, and workplace colleagues as being unfaithful, bi-sexual, and/or gay if I continued participating in the divorce proceedings." Thomas argued, in part, that he was vulnerable to these threats given his traditional Asian family background and their views on divorce.

On October 17, 2022, Phoebe filed a responsive declaration to the

6

motion to set aside the judgment. Phoebe averred: "The court's records in this case show [Thomas] was noticed, and had the opportunity to be heard at all hearings, including Trial."

On December 5, 2023, April 15, 2024, and April 17, 2024, the trial court conducted hearings on the motion. Thomas testified at the hearing, as well as a clerk of the court who worked in department L64 at the time of the trial in 2020.

On May 29, 2024, the trial court filed an order after hearing denying Thomas's motion to set aside the judgment. In a written statement of decision, the court found Thomas received notice of the trial date and there was no evidence of duress.[3]

## II.

## DISCUSSION

Thomas claims the trial court abused its discretion by denying his motion to set aside the judgment based on: A) an alleged lack of notice under section 594; and B) alleged threats by Phoebe to "out" him, which caused him duress (Fam. Code, § 2122). We shall analyze each claim.

*A. The Court Found Thomas Was Given Actual Notice of the Trial Date*

Thomas alleges that his "due process rights were violated when he did not receive actual, timely, written notice" of the September 16, 2020, trial date. (Capitalization omitted.) We disagree.

"The abuse of discretion standard is not a unified standard; the

---

[3] The hearings on the motion and the trial court's rulings will be covered in detail in the discussion section of this opinion. Thomas filed a motion in this court to augment the record with a transcript of a hearing on July 11, 2024. This is not relevant to our analysis, so the motion is denied.

deference it calls for varies according to the aspect of a trial court's ruling under review. The trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious." (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711–712, fns. omitted.)

"'A judgment or order of the lower court is *presumed correct*. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown.'" (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.)

In this part of the discussion, we shall: 1) review relevant principles of law; 2) summarize the trial court proceedings; and 3) analyze the relevant law as applied to the facts.

### 1. Relevant Principles of Law

"In superior courts either party may bring an issue to trial . . . in the absence of the adverse party . . . ; provided, however, if the issue to be tried is an issue of fact, proof shall first be made to the satisfaction of the court that the adverse party has had 15 days' notice of such trial . . . as specified in subdivision (b)." (§ 594, subd. (a).) "The notice to the adverse party required by subdivision (a) shall be served by mail on all the parties by the clerk of the court not less than 20 days prior to the date set for trial. . . . If notice is not served by the clerk as required by this subdivision, it may be served by mail by any party on the adverse party not less than 15 days prior to the date set for trial . . . ." (§ 594, subd. (b).)

"'Where the defendant who has answered fails to appear for trial "the plaintiff's sole remedy is to move the court to proceed with the trial and introduce whatever testimony there may be to sustain the plaintiff's cause of

8

action." [Citation.] In such case a plaintiff is entitled to proceed under the provisions of Code of Civil Procedure, section 594 . . . ."'[4] (*Heidary v. Yadollahi* (2002) 99 Cal.App.4th 857, 863.)

"It is clear that section 594(b) serves to promote the same policy objective as section 594(a)—to prevent judgments where one party had no notice of trial. It does so in part by requiring that proof of notice made pursuant to section 594(a) be introduced into evidence at trial. But neither this clear statutory purpose nor the need to avoid a miscarriage of justice is served by reversing a judgment for failure to comply with section 594(b)'s evidentiary rule when it is clear from the record that the prevailing party provided actual, timely notice of the trial date to the defaulting party." (*In re Marriage of Goddard* (2004) 33 Cal.4th 49, 58; *Parker v. Dingman* (1975) 48 Cal.App.3d 1011, 1016 ["Actual notice, however acquired, is sufficient"].)

"Compliance with section 594(a)'s notice requirement is 'mandatory.'" (*Au-Yang v. Barton* (1999) 21 Cal.4th 958, 963.) Nonetheless, actual notice to the adverse party—however acquired—is sufficient to proceed with the trial in the absence of the adverse party. (*Colony Bancorp of Malibu, Inc. v. Patel* (2012) 204 Cal.App.4th 410, 418.)

"The court . . . *may*, on motion of either party after notice to the other party, set aside any void judgment or order." (§ 473, subd. (d), italics added.) "Section 473, subdivision (d) provides a trial court *may,* on motion of either party . . . , set aside any void judgment or order; inclusion of the word 'may' in the language of section 473, subdivision (d) makes it clear that a trial

---

[4] Because Thomas initially filed an answer, the resulting judgment is considered unopposed or uncontested rather than a judgment "entered by 'default.'" (See *Garamendi v. Golden Eagle Ins. Co.* (2004) 116 Cal.App.4th 694, 705.)

9

court retains discretion to grant or deny a motion to set aside a void judgment." (*Kremerman v. White* (2021) 71 Cal.App.5th 358, 369.)

### 2. Trial Court Proceedings

At the hearing on the motion to set aside the judgment, Thomas testified that the address and cell phone number that were on file with the trial court were still correct. Thomas said that he at no point provided the court with his e-mail address, and he never consented to being served via e-mail. Thomas testified that he did not receive any U.S. mail or an e-mail from Phoebe's attorney notifying him prior to the trial date of September 16, 2020.

On cross-examination, Thomas confirmed that two e-mail addresses that the trial court had on file were the same addresses he had for a substantial period of time (since at least 2015). Thomas agreed that if the court left a voicemail message on his cell phone, then he would have known about it. Thomas confirmed that he was asked to produce his cell phone billing records for the instant hearing, but he did not do so.

The clerk of the court who worked at the time of the dissolution trial testified as to the minute order of July 23, 2020, which stated: "The Court orders this matter continued to September 16, 2020 at 1:30 PM in Department L64 via Teams with a 2 hour time estimate. [¶] Due to the Court's unavailability, matter is continued under the direction of the court as indicated above. [¶] Parties notified telephonically. [¶] Remote hearing shall serve as notice." The clerk testified: "Generally, if we weren't able to get a hold [of] someone and they didn't have a voicemail, it would say we weren't able to get a hold of them." The clerk said that notice of the remote hearing would also have been sent as an e-mail invitation to both parties.

The clerk testified that although it was habit and custom, she

10

had no specific recollection of speaking with Thomas over the phone. The clerk also said she had no specific recollection of Thomas ever sending an e-mail to the court. The clerk testified that it was her understanding that e-mails are only kept by the court for a year.

At the conclusion of the hearing, the trial court stated that it had "listened to the evidence and heard the parties' arguments. Heard the parties testify and made credibility determinations about the parties. I also went back and reviewed the exhibits. As well as all the documents that were provided in support of the respondent's motion to set aside the judgment." The court noted that Thomas "failed to not only file his preliminary declaration of disclosure, but he also failed to appear when ordered by the court." The court also noted that Thomas failed to appear at the hearing on evidentiary sanctions, the trial setting conference, and the mandatory settlement conferences.

The trial court focused on the original trial date of June 8, 2020, in which Thomas also failed to appear. The court quoted Thomas's testimony that "'he should have received that notice at that time.'" The court stated: "But, nevertheless, in this court's view, he knowingly and voluntarily declined to appear at the original trial date. At that date -- on that date shortly thereafter, the court then set the case for trial again, on July 23rd, 2020. And at that time, . . . the Court asked [Phoebe's] counsel to provide [Thomas] with notice of that hearing date."

"And the incorrect notice date was provided, but we heard testimony today from [the court clerk]. That had [Thomas] shown up at trial date, she would have advised him to appear the following date on the 23rd. Or log into Teams at that point. At least in this court's experience, in dealing with the Covid issue that was occurring at the time.

11

"No one appeared on July 23rd, the minute order from that date reflects that the trial was then continued to September 16th, 2020, due to the court's unavailability. The minute order reflects that, number one, the parties were notified telephonically. There's no indication in the record that [during the court clerk's] testimony . . . that she otherwise wavered.

"*The fact is that there's a notification or a statement in the record in the minute order that the parties are notified telephonically*. This court infers that [Thomas] was . . . given proper notice to appear on the 16th of September, 2020. Furthermore, the minute order reflects that the remote hearing would serve as a notice to the respondent to appear." (Italics added.)

"And I'm well aware of . . . the requirements of CCP 594. Nevertheless, it's this court's interpretation that, not only did [Thomas] fail to comply with the court's orders and provide his preliminary declaration of disclosure. This court believes he deliberately failed to avail himself of all the four previous notices."

"And it is readily apparent that during Covid, there were telephonic and/or remote appearances being allowed pursuant to emergency court orders. [¶] . . . And it's my belief [that the court clerk] was simply abiding by the Court's orders in providing sufficient notice to [Thomas]."

*3. Application and Analysis*

"Exercises of discretion must be "'grounded in reasoned judgment and guided by legal principles and policies appropriate to the particular matter at issue.'"" (*In re D.P.* (2023) 92 Cal.App.5th 1282, 1291.)

Here, the trial court appeared to be aware of the appropriate legal principles regarding its discretion to grant or deny Thomas's motion to set aside the 2020 judgment based on an alleged lack of notice. The court also

12

appeared to thoughtfully consider the testimony of Thomas, and the court clerk who was working at the time of the 2020 trial. The court summarized its analysis both verbally, and in a later written statement of decision, which cited relevant case law and relevant statutes.

In sum, we find that the trial court did not approach its decision in an arbitrary or capricious manner. While we recognize other courts may have perhaps ruled differently, we cannot say that the court's decision to deny Thomas's motion was in any manner arbitrary or capricious.

As to Thomas's claim regarding his alleged lack of notice, the trial court apparently found that the *written* 15-day notice requirement of section 594, subdivision (b), was not complied with prior to the September 16, 2020, trial date. However, the court also found that Thomas received actual, telephonic notice of the trial date, which was communicated by the superior court clerk on July 23, 2020. This qualified as sufficient notice under long standing case law. (See *Parker v. Dingman* (1975) 48 Cal.App.3d 1011, 1016 ["Actual notice, however acquired, is sufficient" under section 594].)

The trial court's factual finding of actual notice is supported by substantial evidence: the July 23, 2020, minute order; the sworn testimony by the superior court clerk; and the corroborative timing of the trial (during the period of remote trials due to the COVID-19 closures). We note that Thomas does not dispute that Covid-19 emergency orders were in effect at the time of the September 16, 2020, trial date.

Thus, we find that the trial court did not abuse its discretion when it denied Thomas's motion to set aside the marital dissolution judgment based on an alleged lack of notice under section 594.

Thomas argues that the court clerk "testified she had no recollection of ever speaking to [him]." But, of course, this is not at all

13

surprising given the number of calls to various parties a court clerk might make in a given year, and the fact that the hearing on the motion took place about four years after the trial at issue. (See Evid. Code, § 1105 ["Any otherwise admissible evidence of habit or custom is admissible to prove conduct on a specified occasion in conformity with the habit or custom"].)

Thomas also argues that the trial court erred by *inferring* that he had telephonic notice of the trial date. Thomas argues: "An 'inference' that [he] received the proper notice for the September 16, 2020, hearing, is not the proper showing required." We disagree.

A trial court's factual findings are reviewed for substantial evidence. (*Haraguchi, supra*, 43 Cal.4th at pp. 711–712.) Substantial evidence includes reasonable inferences drawn from witness testimony. (*Bowers v. Bernards* (1984) 150 Cal.App.3d 870, 873–874 ["when two or more inferences can reasonably be deduced from the facts, a reviewing court is without power to substitute its deductions for those of the trial court"].)

Here, based on the testimony of the superior court clerk, it is a reasonable inference that Thomas was notified telephonically of the September 16, 2020, trial court date. Although Thomas testified he was never contacted by phone, he did testify that the phone number that the court clerk had on file was his correct cell phone number. The court was, of course, in the best position to judge the credibility of Thomas's testimony. (See *Bowers v. Bernards, supra,* 150 Cal.App.3d at p. 874 ["it is of no consequence that the trial court believing other evidence, or drawing other reasonable inferences, might have reached a contrary conclusion"], italics omitted.)

Further, even if the trial court had found that Thomas did not receive actual notice of the September 16, 2020, trial date, we would still find that the court acted within its discretion in refusing to set aside what would

14

have arguably been a void judgment. This is based on Thomas's repeated refusal to comply with the court's orders, and his repeated refusal to participate in the dissolution proceedings. (See *Kremerman v. White, supra,* 71 Cal.App.5th at p. 369 ["inclusion of the word 'may' in the language of section 473, subdivision (d) makes it clear that a trial court retains discretion to grant or deny a motion to set aside a void judgment"].)

## B. The Trial Court Found No Evidence of Duress

Thomas claims Phoebe threatened him prior to the September 2020 trial, and he did not attend due to duress; therefore, the trial court erred by denying his motion to set aside the judgment. We disagree.

In this part of the discussion, we shall: 1) review relevant principles of law; 2) summarize the trial court proceedings; and 3) analyze the relevant law as applied to the facts.

### 1. Relevant Principles of Law

"It occasionally happens that the division of property or the award of support, whether made as a result of agreement or trial, is inequitable when made due to the nondisclosure or other misconduct of one of the parties." (Fam. Code, § 2120, subd. (b).)

Under Family Code section 2122, a party may move to set aside a judgment of dissolution of marriage. (*In re Marriage of Diamond* (2024) 106 Cal.App.5th 550, 565–566 (*Diamond*).) The moving party has the burden to prove "actual fraud, perjury, *duress*, mental incapacity, mistake of fact, or failure to comply with disclosure requirements." (*Ibid.*, italics added.)

"[T]he Family Code does not define 'duress.' Generally, in the context of section 2122, courts have found """[d]uress . . . includes whatever

15

destroys one's free agency and constrains [him or her] to do what is against [his or her] will, [and] may be exercised by threats, importunity or any species of mental coercion . . . .'" [Citation.] It is shown where a party 'intentionally used threats or pressure to induce action or nonaction to the other party's detriment. . . .' [Citations.] The coercion must induce the assent of the coerced party, who has no reasonable alternative to succumbing.'"'" (*Diamond, supra,* 106 Cal.App.5th at pp. 571–572.)

"The party moving for relief under section 2122 bears the burden of proving entitlement to relief." (*Diamond, supra,* 106 Cal.App.5th at p. 566.) "We review the family court's ruling under section 2122 for abuse of discretion, which generally requires applying the substantial evidence standard to the family court's factual findings." (*Ibid*.)

"However, a different standard applies where, as here, the appellant had the burden of proof in the family court. '"In the case where the trier of fact has expressly or implicitly concluded that the party with the burden of proof did not carry the burden and that party appeals, it is misleading to characterize the failure-of-proof issue as whether substantial evidence supports the judgment." [Citation.] "Thus, where the issue on appeal turns on a failure of proof at trial, the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law.'"'" (*Diamond, supra,* 106 Cal.App.5th at p. 566.)

"'"'Specifically, the question becomes whether the appellant's evidence was (1) 'uncontradicted and unimpeached' and (2) 'of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding.'"'" [Citations.] "'[W]here . . . the judgment is against the party who has the burden of proof, it is almost impossible for him to prevail on appeal by arguing the evidence compels a judgment in his

16

favor.'" [Citations.] 'That is because unless the [family] court makes specific findings of fact in favor of the losing [party], we presume the [family] court found the [losing party's] evidence lacks sufficient weight and credibility to carry the burden of proof. [Citations.] We have no power on appeal to judge the credibility of witnesses or to reweigh the evidence.'" (*Diamond, supra,* 106 Cal.App.5th at pp. 566–567.)

### 2. Trial Court Proceedings

At the hearing on the motion to vacate the judgment, Thomas testified on direct examination that prior to the divorce, Phoebe "started to make comments about . . . pornography and outing me to -- telling neighbors, and friends, and -- and family of what she thought I was doing, it was just stuff that should -- to me, should have remained behind closed doors, and it -- it made me withdraw from -- from participating in some of the stuff." Thomas said that he did not remember the exact wording of what Phoebe said, but Thomas testified that Phoebe said that "you wouldn't like it if the neighbors found out." Thomas testified, "She accused me of being gay." Thomas said this made him feel: "Very withdrawn." Thomas testified that Phoebe made these types of statements both before and after she filed for divorce.

On cross-examination, Phoebe's counsel asked Thomas if Phoebe made a specific threat to "out" him if he participated in the divorce proceeding. Thomas responded that "it became that way." Thomas said: "The comments that were made weren't exactly how you state them, but, yes, that's how it came across." When pressed on what specific words Phoebe used when she was threatening him regarding his participation in the dissolution proceedings, Thomas said that he did not "remember the exact verbiage."

After Phoebe's counsel read from Thomas's deposition testimony,

17

the following colloquy took place:

"[Counsel:] So my question to you, Mr. Gong, is she didn't specifically threaten to out you if you participated in the divorce, did she?

"[Gong:] With the conversation that took place, it was about the divorce and then those lines would come out.

"[Counsel:] But that was implied to you; right?

"[Gong:] Yes, I took it as -- in regards to this case, yes."

When asked if there were any other people present when Phoebe made comments that Thomas understood to be implied threats, Thomas said there were not. Thomas said he never documented any of the conversations, although he had earlier provided a letter dated in the beginning of 2016 as documentation. When asked to point out in the 2016 letter where Phoebe said she was going to "out" Thomas if he participated in the divorce proceedings, Thomas responded: "She presented this to me I believe after discussing it with a neighbor to help rewrite this and then during verbal conversations of this is when it came out." When pressed further, Thomas said: "The word outing does not exist in this letter, correct." Thomas said "that the term outing was implied."

Thomas confirmed that he had indicated in his moving papers that he was embarrassed about the divorce because of his background in the Asian community. Thomas said that his grandparents were from China, but his father, who died prior to the divorce proceedings was born in the United States. Thomas said that his mother was Caucasian, and also died prior to the divorce proceedings. Thomas testified that his parents had divorced in the late 60's or early 70's. Thomas also said that almost all of his siblings have been divorced at least once.

When making its ruling as to the issue of duress, the trial court

18

stated: "The evidence that I heard from [Thomas] in this case, in my mind, is not specific. There's no specific evidence that there were any threats made. Or any specific statements made by [Phoebe] that his . . . participation here would . . . result in [Phoebe] quote/unquote, 'outing [Thomas].' [¶] Such that, he was forced not to participate or cooperate in the proceedings in this case. So I don't find any evidence of . . . duress . . . ."

### 3. Application and Analysis

The trial court's ruling that there was no evidence of duress is well supported by Thomas's testimony, which was vague as to Phoebe's alleged threats. Further, Thomas's testimony that some of Phoebe's alleged threats actually *preceded* the divorce proceedings certainly supports an inference that any such comments were not designed to prevent Thomas from participating in any legal proceedings. (See *Diamond, supra,* 106 Cal.App.5th at pp. 571–572 ["The coercion must induce the assent of the coerced party, who has no reasonable alternative to succumbing'"].)

Thus, we find that the trial court did not abuse its discretion when it denied Thomas's motion to set aside the marital dissolution judgment based on alleged threats and duress under Family Code section 2122.

Thomas argues that the case of *In re Marriage of Baltins* (1989) 212 Cal.App.3d 66 (*Baltins*) compels a different result. We disagree.

In *Baltins*, Husband was a physician. (*Baltins, supra,* 212 Cal.App.3d at p. 73.) Wife did the paperwork for Husband's practice. (*Id.* at pp. 73–74.) Following a separation, Wife signed a settlement agreement Husband had written. Husband filed a petition for dissolution of marriage in propria persona alleging that the division of property and support obligations had been disposed of by mutual agreement. Following an uncontested

19

hearing, "the court entered a final judgment on Husband's request." (*Id.* at p. 74.) Wife later filed a motion to set aside the judgment on the basis of duress. At an evidentiary hearing, Wife testified that Husband "physically abused her and she was frightened about losing custody of their child if she left." (*Id.* at p. 75.) Husband demanded that Wife fire a divorce attorney she had hired, "which she did." (*Ibid.*) Other witnesses testified that at the time of the divorce, Wife was in an emotional state and "unable to confront husband." (*Id.* at p. 78.) The trial court granted the motion to set aside the dissolution judgment, and Husband appealed. (*Id.* at pp. 74–75.)

On appeal, Husband claimed "that there was no evidence he intentionally exercised duress to force Wife into an unequal agreement." (*Baltins, supra,* 212 Cal.App.3d at pp. 83–84.) The Court of Appeal disagreed and found: "Wife's consent to the agreement and entry of a default judgment was procured by duress practiced on her by Husband and that his acts were intentional. She was effectively deprived of independent counsel; she was in a distraught and weakened condition emotionally and unable to confront Husband; he undermined her psychologically by repeatedly telling her she had not contributed as much as he to the marriage and was not an equal partner; he made threats and misrepresentations and pressured her into taking immediate action; she agreed to an unconscionable contract; and she had no reasonable alternative. Thus, through the 'extrinsic' factor of duress, she was denied a fair adversary hearing." (*Id.* at p. 87.)

In this case, Thomas had the burden of proof to set aside the judgment on the basis of duress, but the only evidence he presented at the hearing was his vague and nonspecific testimony about alleged threats by Phoebe to "out" him. On cross-examination, Thomas conceded that Phoebe's alleged threats were only implied based on his understanding of their

20

meaning. And unlike the moving party's testimony in *Baltins*, Thomas's testimony at the hearing was wholly without corroboration.

In short, the *Baltins* opinion does not alter our analysis that the trial court's ruling, which denied Thomas's motion to set aside the judgment on the basis of duress, is well supported by the evidence. (See *Diamond*, *supra*, 106 Cal.App.5th at p. 566 ["""[W]here . . . the judgment is against the party who has the burden of proof, it is almost impossible for him to prevail on appeal by arguing the evidence compels a judgment in his favor""""].)

Thomas also argues that the trial "court disregarded the law of *Balcof* which stated that duress may be exercised by 'threats, importunity, or any species of mental coercion.' *In re Marriage of Balcof* 2006 141 Cal.App.4th 1509, 1523. The trial court only addressed a single aspect of the law, that of verbal threats. It ignored the aspects of pestering, harassing, importuning, or other species of mental coercion." We disagree.

At the hearing on the motion to vacate the judgment, Thomas testified that Phoebe made implied threats to "out" him, which the trial court found to be "not specific." We do not infer from the court's ruling that the court somehow "ignored" any additional evidence. Indeed, Thomas did not testify that he failed to participate in the dissolution proceedings due to any other separate form of alleged coercion by Phoebe (e.g., pestering, harassing, importuning, etc.).

III.

DISPOSITION

The order of the trial court denying appellant Thomas Lee Gong's motion to vacate the dissolution judgment is affirmed. Costs on appeal are awarded to respondent Hsuehling Phoebe Gong.

MOORE, ACTING P. J.

WE CONCUR:

DELANEY, J.

SCOTT, J.

22