Filed 2/18/26  Sanchez v. Hart CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| GEORGE SANCHEZ,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>HOYT E. HART II,<br><br>    Defendant and Appellant. | D084650<br><br><br>(Super. Ct. No. 37-2016-00034871-CU-PN-CTL) |


APPEAL from a judgment of the Superior Court of San Diego County, Katherine A. Bacal, Judge.  Affirmed.

Hoyt E. Hart II, in pro. per., for Defendant and Appellant.

Law Offices of Daniel J. Williams and Daniel J. Williams, for Plaintiff and Respondent.

Following a bench trial, attorney Hoyt E. Hart II was found to have committed a breach of his fiduciary duties, conversion, and financial elder abuse against a dependent adult while representing George Sanchez and the now-deceased Janis Sanchez.  Though the matter was set for a jury trial, when Hart failed to timely return to court after receiving one hour to obtain a declaration in support of his request to continue trial, the court found Hart

had waived his right to a jury trial, commenced a bench trial, and began hearing from Sanchez's first witness. Hart appeared nearly an hour late and after about 40 minutes of witness testimony. Hart raises various grounds on appeal.

First, Hart argues the court committed reversible error by denying him trial by jury. We conclude, as the trial court did, Hart waived his right to a jury trial "[b]y failing to appear at the trial" when he did not return to court by the time set for proceedings to recommence without giving the court any indication when he might return. (Code Civ. Proc., § 631, subd. (f)(1).)

Second, Hart claims a due process violation based on the court receiving witness testimony without him present. But because Hart had actual notice of the trial date and the time to "recommence," the court was authorized under section 594(a) to proceed with trial in his absence.

Third, Hart contends the trial court prejudged the outcome of the case when, upon his late return, it advised him "[t]hings have already occurred that would trigger a mandatory report by this court to the State Bar, . . . at least based on that testimony," and gave him time to obtain a rough transcript before trial resumed. We disagree, as in our view the record indicates the court had not reached a fixed conclusion and would keep an open mind until it received all evidence.

Fourth, Hart challenges the sufficiency of the evidence for various factual findings. Most of these claims are forfeited either because Hart fails to address evidence supporting the judgment or for lack of supporting legal authority. For the one preserved claim, we conclude substantial evidence supports the court's finding.

We therefore affirm the judgment.

2

## I.

### A.

Hart represented the Sanchezes for claims of professional negligence, medical battery, and loss of consortium related to injuries Janis suffered due to her exposure to a blood thinner following a mitral valve surgery. Some of the defendants settled, while others were dismissed. After two offers to settle were declined, the claims against the hospital ended in a defense verdict.

### B.

Sanchez, on his own behalf and as Janis' successor in interest, sued Hart for (1) professional negligence, (2) breach of fiduciary duty, (3) conversion, and (4) financial elder abuse of a dependent adult. Among other things, Sanchez alleged Hart failed to advise him and Janis of the hospital's section 998 settlement offers and the consequence of declining the offers; failed to provide an accounting of funds allegedly paid on the Sanchezes' behalf; obtained an unreasonable loan from them with no repayment terms or interest; charged an unreasonable fee exceeding the amount permitted under law; and misappropriated their funds under the guise of costs without approval.

Hart asserted a cross-claim of breach of contract for unreimbursed costs.

#### 1.

Trial was set to begin the morning of October 11, 2023.

That morning, Hart filed a declaration and request to continue trial. Hart attested that he had engaged an attorney in July to assist him at trial and had "introduced" the attorney to the court and Sanchez's counsel the day before trial. But, according to Hart, after a call from Sanchez's counsel to the attorney's firm, the firm ordered the attorney to "immediately withdraw from

3

the case." Given the attorney's "abrupt withdrawal," Hart requested a 90-day continuance for him to retain new counsel.

The court addressed the request with Hart in court at 9:00 a.m. Because Hart had been self-represented since March and the new attorney had never substituted in, the court was "perplexed" why Hart representing himself would be good cause to continue trial.[1] Despite the court's tentative ruling to deny the request, it gave Hart "an hour" to obtain a declaration from the attorney addressing "when he was retained and agreed to take on the matter." The court informed the parties "we'll pick up in an hour, if the tentative is confirmed denying the continuance." At the end of the discussion, the court confirmed "[w]e'll recommence at 10:00."

At 10:07 a.m., the court went on the record to note Hart had not returned.

The court took a recess until "just after 10:15 in the morning," at which point Hart still had not appeared. The court stated for the record that "about 15 or 20 minutes ago" someone from Hart's office called the court to say they had located the attorney "and were trying to obtain a declaration." But "[t]he court has received nothing. It has not received a filing, and Mr. Hart is not present." Consequently, the court found Hart had waived his right for a jury trial, so it commenced the matter as a bench trial. After waiving his opening statement, Sanchez took the stand as the first witness.

At around 10:55 a.m.—nearly an hour late—Hart entered the courtroom. The court informed him trial had commenced and Sanchez had been testifying for about 40 minutes.

---

1    Hart informed the court the attorney had "substituted in" the day before. The appellate record, however, contains only the attorney's withdrawal and no record of him substituting in as counsel.

4

Hart presented a declaration from his former attorney and renewed his request for a continuance. Because the declaration did not say Hart had "retained" the attorney and no substitution in had been filed with the court, the court said it would not grant a continuance unless Hart had new counsel lined up. Hart did not.

Next, the court informed Hart that testimony had been taken and "certainly" he could get at least a rough transcript of it. The court also informed Hart that "[t]hings have already occurred that would trigger a mandatory report by this court to the State Bar, and [Hart] should be aware of that, at least based on that testimony." If Hart wanted to obtain a transcript to see what Sanchez had already testified to, the court offered to "take a break so [Hart] can get that, and then we'll pick up where we left off." The court granted Hart's request to recess until 1:30 p.m.

At around 1:30 p.m., Hart made a record to "reserve [his] rights regarding forfeiture of the jury." He emphasized, "I did appear [for trial] earlier in the day." The court responded, "you didn't [appear] until after trial commenced" and "had you been here for trial, we would have had a jury trial at your request." After Hart finished making his record, Sanchez retook the witness stand without objection by Hart.

2.

Following the bench trial, the court found in Hart's favor on the professional negligence claim but against him on the claims for breach of fiduciary duty, conversion, financial abuse of a dependent adult, and the cross-claim for breach of contract. It also found Hart "acted with malice and fraud."

The court entered judgment in Sanchez's favor totaling $3,356,591.71, which included $1.5 million in punitive damages.

5

II.

A.

Sanchez moves to dismiss this appeal because Hart did not submit a new notice of appeal after the trial court issued an amended judgment, which Sanchez argues was a "substantial modification." Hart opposes. We deny the motion.

The substantial modification test helps determine whether the time to appeal begins to run from the original judgment or a later, revised judgment. (*Ellis v. Ellis* (2015) 235 Cal.App.4th 837, 842.) If the revised judgment results in a "'substantial modification,'" then "the revised judgment supersedes the original and becomes the final, appealable judgment in the action." (*Ibid.*) But "[i]f not, any changes are considered to relate back to the original judgment and the time to appeal runs from the entry of the first judgment." (*Ibid.*)

Cases applying the substantial modification test, including the two cited by Sanchez, typically involve a party who appealed from a later amended judgment but not the original. (See, e.g., *Ellis*, 235 Cal.App.4th at p. 842; *Dakota Payphone, LLC v. Alcaraz* (2011) 192 Cal.App.4th 493, 504.) But here we have the opposite situation. Hart timely appealed the original judgment. Sanchez presents no legal authority to support his conclusion that the purported substantial modification in the amended judgment obligated Hart to file a new appeal. As a result, we are not persuaded.

If anything, Sanchez's argument is better understood as contending Hart's appeal was premature given the later amended judgment. To the extent we were to credit such an argument, we exercise our discretion to construe the appeal as filed from the amended judgment. (Cal. Rules of Court, rule 8.308(c).)

6

We therefore deny the motion to dismiss.

B.

Hart contends the court improperly denied him a jury trial because his late return was not a waiver. Sanchez argues Hart's failure to appear at trial constituted a valid waiver of trial by jury under Code of Civil Procedure section 631(f)(1). On this record, we agree with Sanchez.

The parties agree we review de novo the constitutional issue of Hart's waiver of a jury trial. (Citing *Brown v. Mortensen* (2019) 30 Cal.App.5th 931, 938.)

The right to a jury trial is secured by our state constitution. (Cal. Const., art. I, § 16.) A civil trial by jury may be waived only "as prescribed by statute." (*Ibid.*) Section 631 lists the ways a party can waive trial by jury, including "[b]y failing to appear at the trial." (§ 631(f)(1).) Because the right to trial by jury is "so fundamental," courts are to "resolve doubts in interpreting the waiver provisions of section 631 in favor of a litigant's right to jury trial." (*Grafton Partners v. Superior Court* (2005) 36 Cal.4th 944, 956.)

As described above, Hart failed to appear at 10:00 a.m. as directed by the court, instead not returning until around 10:55 a.m. Hart argues he "did not *fail* to appear at trial" under section 631 because he had appeared at 9:00 a.m. Put another way, Hart disputes when trial commenced for purposes of section 631(f)(1). Although trial was originally set to begin at 9:00 a.m., trial did not commence at that time. (See § 581(a)(6) ["A trial shall be deemed to actually commence at the beginning of the opening statement or argument . . . , or if there is no opening statement, then at the time of the administering of the oath or affirmation to the first witness, or the introduction of any evidence."].) Instead, the court continued the matter by

7

one hour so Hart could obtain a declaration. As a result, trial was set to start at 10:00 a.m., but Hart did not appear. Given Hart's absence, the court took another recess until 10:15 a.m., at which point it is undisputed Hart had still failed to appear. (See *Farwell v. Murray* (1894) 104 Cal. 464, 467 [for section 631 purposes, "trial of the case was not commenced [at the original time], but was continued until [a later point in the day]"].) By statute, Hart's absence operated to waive trial by jury. (§ 631(f)(1).)

Hart points to his office's call to the court and argues the court "was aware of why [he] was not in the courtroom." Yet as far as we can tell from the record, that call did not inform the court of when Hart might return, leaving the court, potential jurors, opposing counsel, and witnesses to wait for an unknown length of time. And Hart never sought leave of court to further delay the start of trial. He provides no legal authority permitting him to unilaterally postpone the start of trial for an indefinite period or excusing his failure to appear at the time appointed for trial to "recommence."

We thus discern no error in the trial court's conclusion that Hart waived his right to a jury trial. As a result, we do not need to reach Sanchez's alternative argument based on the doctrine of invited error.

C.

Hart argues the court violated his constitutional due process right by conducting the first 40 minutes of trial in his absence because it prevented him from being able to object to inadmissible evidence and to protect the record for appeal. We disagree.

We review such due process claims de novo. (*Kwan Software Engineering, Inc. v. Hennings* (2020) 58 Cal.App.5th 57, 82.)

As Sanchez notes, section 594 permits a court to proceed with trial "in the absence of the adverse party." (§ 594(a).) "[I]f the issue to be tried is an

8

issue of fact, proof shall first be made to the satisfaction of the court that the adverse party has had 15 days' notice of such trial." (*Ibid.*)

For section 594 purposes, "actual notice, however acquired, is sufficient." (*Colony Bancorp of Malibu, Inc. v. Patel* (2012) 204 Cal.App.4th 410, 418 [cleaned up].) In *Colony Bancorp*, defense counsel returned to court late after a break. (*Id.* at p. 416.) The court had ordered the parties back at a specific time and resumed trial at that time in defense counsel's absence. (*Ibid.*) Defense counsel arrived during the plaintiffs' direct examination of a witness. (*Id.* at p. 417.) The appellate court rejected the defendant's claim of constitutional violation because the trial court had authority to resume trial at the set time under section 594. (*Id.* at pp. 417-418.) Because defense counsel "had actual notice the trial would resume at 1:30 p.m., . . . the trial court had the authority to proceed with the matter in the absence of [defendant] and his counsel." (*Id.* at p. 418.)

*Colony Bancorp* guides us here. The court ordered proceedings to resume at 10:00 a.m. and, when Hart failed to appear by 10:15 a.m., the court commenced trial and witness examination began. Hart attested that he had been aware of the trial date for months, and he was present when the court stated proceedings would "recommence" at 10:00 a.m. Because Hart had actual notice of the start time, under section 594 the court did not err by conducting the trial in Hart's absence until he showed up.

Hart protests that section 594 does not apply because he "did not fail to appear for trial." For the reasons discussed above, we disagree. Hart failed to appear at the appointed time without seeking leave of court to extend his time to obtain the attorney declaration.

Hart also claims section 594 is inapplicable because its "mandatory notice provisions were not complied with." As Hart notes, section 594's notice

9

requirement is "'mandatory.'" (Quoting *Bird v. McGuire* (1963) 216 Cal.App.2d 702, 713.) Yet even the case Hart cites recognizes that the formal notice requirement does not apply "where the adverse party or [that party's] attorney has *actual* notice or knowledge for the required time that the case is in fact set for trial on a certain date." (*Id.* at p. 714.) Such is the case here. Consequently, it stands in contrast to another case Hart cites in which the trial court "exceeded its authority when it conducted the trial in defendant's absence" because "there was and could have been no proof that defendant received the notice required by section 594(a)." (*Au-Yang v. Barton* (1999) 21 Cal.4th 958, 964.)

The court thus did not err by receiving 40 minutes of testimony in Hart's absence.

D.

Hart accuses the trial court of "improperly prejudg[ing] the outcome of the case" after the first 40 minutes of testimony based on a comment the court made to Hart upon his late return. Sanchez argues the court's statement did "not constitute prejudging, bias, or any impermissible conduct." We agree with Sanchez.

We apply de novo review to this due process claim. (*Kwan Software Engineering*, 58 Cal.App.5th at p. 82.)

Due process deals with fundamental fairness. (*In re Marriage of Carlsson* (2008) 163 Cal.App.4th 281, 290.) As part of that fairness, "[a] trial judge should not prejudge the issues but should keep an open mind until all the evidence is presented." (*Id.* at p. 291 [cleaned up].)

Once Hart returned to court—nearly an hour late—the court informed him "[t]hings have already occurred that *would* trigger a mandatory report by this court to the State Bar, and you should be aware of that, *at least based on*

10

*that testimony.*" (Italics added.) The court then gave Hart time to obtain a rough transcript of the testimony before trial resumed that afternoon.

Hart construes the court's statement as "announc[ing] a key fact finding" after hearing testimony in his absence and "prejudg[ing] the outcome" before he presented any evidence. We disagree. First, a court's expressions of opinion in the discharge of its official duties are not evidence of prejudice. (*Kreling v. Superior Court* (1944) 25 Cal.2d 305, 310-311.) Second, rather than a foregone conclusion, the court raised the possibility of mandatory reporting in limiting terms—it "would" be triggered "at least based on that testimony"—that suggest the court would keep an open mind until it had received all evidence. And the court gave Hart time to review the testimony he missed by returning late so he could be in a better position to defend himself. Finally, by the end of trial, the court ruled in Hart's favor on the professional negligence cause of action. Taken together, we are not convinced the court prejudged the outcome.

The cases Hart identifies show why the court's conduct here falls short of a due process violation. In one, the court "abruptly ended the trial before [a party] finished his presentation, cutting off any opportunity for rebuttal evidence." (*In re Marriage of Carlsson*, 163 Cal.App.4th at p. 291.) In another, before trial and with unresolved motions pending before him, the trial judge wrote to the parties that the defendant "'should consider offering some of their abundant means to help resolve this problem'" because he believed the plaintiffs would prevail and obtain "'a very sizable judgment.'" (*Pacific etc. Conference of United Methodist Church v. Superior Court* (1978) 82 Cal.App.3d 72, 76-77, 81.) In yet another, "the court appears to have been almost entirely indifferent to evidence corroborating [the plaintiff's] fundamental contentions" while "completely brush[ing] aside [the

11

defendant's] failure on the stand to explicitly deny [them]." (*Catchpole v. Brannon* (1995) 36 Cal.App.4th 237, 259.) In the last, the court "indicated early in the presentation of plaintiff's case—and before having heard her evidence . . . —that he was not favorable to an award of alimony," including by stating, "'I have told you that I am not going to award any support.'" (*Webber v. Webber* (1948) 33 Cal.2d 153, 156, 157.) When compared to these cases, the evidence here cannot be construed as the court reaching a firm conclusion as to reporting Hart or prejudging the case.

E.

Lastly, Hart challenges the sufficiency of the evidence for various findings in the court's decision after trial. He contends (1) the 40 percent attorney fees he received from a $1-million settlement with one of the defendants in the action he litigated on behalf of the Sanchezes "did not exceed the maximum allowed fee," (2) his cross-claim for unreimbursed costs were not posttrial costs as the court found, (3) the evidence did not show malice, (4) the punitive damages award of $1.5 million was not supported by the evidence, and (5) his case expenses "were audited and found to be fully accounted for." We conclude all claims but the last are forfeited. As for the last claim, Hart has not met his burden to establish either error or prejudice.

Our review for substantial evidence "*begins* and *ends* with the determination as to whether, *on the entire record*, there is substantial evidence, contradicted or uncontradicted, which will support the determination." (*Bowers v. Bernards* (1984) 150 Cal.App.3d 870, 873-874.) "We do not reweigh evidence or reassess the credibility of witnesses." (*Pope v. Babick* (2014) 229 Cal.App.4th 1238, 1246.) We view the evidence and resolve all evidentiary conflicts in favor of the judgment. (*Verrazono v. Gehl Co.* (2020) 50 Cal.App.5th 636, 652.) It does not matter if other evidence

12

could support a different finding so long as some evidence would support the finding of fact.  (*Ibid.*)

1.

Sanchez argues Hart forfeited his sufficiency of the evidence claims by failing to "cite and discuss the evidence in the record supporting the [j]udgment and explain why such evidence is insufficient as a matter of law." We agree that most claims are forfeited for one reason or another.

As a "fundamental principle of appellate procedure," we presume the trial court's order is correct.  (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608-609.)  Because of this presumption, "the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment." (*Id.* at p. 609.)  To satisfy that burden, an appellant challenging the sufficiency of the evidence "'must cite the evidence in the record supporting the judgment and explain why such evidence is insufficient as a matter of law.'"  (*Verrazono*, 50 Cal.App.5th at p. 652.)  "'The fact that there was substantial evidence in the record to support a contrary finding does not compel the conclusion that there was no substantial evidence to support the judgment.'"  (*Ibid.*)  Failure to set forth all material evidence forfeits a substantial evidence claim.  (*Id.* at p. 653.)

a.

Related to its determination on the claims for breach of fiduciary duty, conversion, and financial abuse of Janis as a dependent adult, the court found Hart took "excessive" attorney fees, which the parties appear to agree relates to the 40 percent fee he took from a $1 million settlement with one of the defendants in the underlying case.

13

Hart argues the 40 percent fee "did not exceed the maximum allowed fee" because the settlement resolved mixed claims of professional negligence and medical battery, which excepts it from the Medical Injury Compensation Reform Act statutory cap on attorney fees. (Citing *Waters v. Bourhis* (1985) 40 Cal.3d 424, 437-438 and Bus. & Prof. Code, § 6146.) In support, Hart points to his retainer agreement with the Sanchezes and the first amended complaint, which respectively permits and asserts claims for medical negligence and medical battery, as well as testimony that the settlement released all claims. He also relies on a purported modification Janis made to the retainer agreement.

In his opening brief, Hart omits evidence supporting the court's finding. For example, he does not address

- the court's finding that Hart's previous testimony—which included testimony that Hart took the medical malpractice statutory fee, which is subject to the MICRA cap on fees—was "more compelling than the testimony at the present trial";

- the testimony of Sanchez's expert Valerie Hong, who opined that Hart took over $250,000 more in attorney fees than he was entitled to; and

- the testimony that this settlement was "probably" "for the medical [negligence] claims," while "everything else was merely released."

In addition, Hart discusses "Janis' modification" to the retainer agreement without acknowledging or addressing the court's finding that Hart's "testimony as to the purported modification of the retainer agreement" was "not credible."

Despite Sanchez identifying most of this evidence in its responding brief, in reply Hart claims without further discussion that he "fully addressed the propriety of the non-MICRA 40% fee" on the settlement. By ignoring the

14

evidence supporting the court's finding that the 40 percent attorney fees taken on this settlement was excessive, Hart forfeits the point. (*Verrazono*, 50 Cal.App.5th at p. 653.)

b.

On Hart's cross-claim for breach of contract related to unreimbursed costs, the court found he "did not prove that [the Sanchezes] breached any contract" with him and the "additional costs requested by [Hart] for the appeal and the motion for new trial are not supported" by the retainer agreement.

Hart contends the court "incorrectly attributed" his unreimbursed cost claim to posttrial and appellate activities when he in fact sought trial costs.

Even after Sanchez identifies evidence undiscussed in the opening brief that could support the court's finding of no breach of contract—including evidence Hart did not obtain prior approval for costs purportedly advanced and the adverse credibility finding on the alleged modification to the retainer—Hart fails to address it in his reply brief. Instead, Hart faults Sanchez for "offer[ing] no citation to the evidence to prove his point." While it would have been helpful for Sanchez to do more than refer back to ten pages of his procedural and factual background, Hart forgets who bears the burden on appeal: him. (*Jameson*, 5 Cal.5th at p. 609.) By not addressing this evidence, Hart forfeits the point. (*Verrazono*, 50 Cal.App.5th at p. 653.)

It is also arguably forfeited because Hart neither explains nor provides legal authority for why any purported error about some or all of the costs being for appellate or posttrial matters undermines the court's ultimate conclusion that Hart did not prove a breach of contract. "[W]e cannot presume prejudice and will not reverse the judgment in the absence of an

15

affirmative showing there was a miscarriage of justice." (*Century Surety Co. v. Polisso* (2006) 139 Cal.App.4th 922, 963.)

c.

The court found Hart "acted with malice and fraud" because he "clearly knew that what [he] took [was] for his own benefit," including the excessive attorney fees and checks written to himself as "unsupported costs reimbursements," and "would be to the [Sanchezes'] detriment."

Hart challenges this finding because the attorney fees and cost reimbursements were "taken pursuant to a lawful retainer contract," and he contends "[i]t is not malicious to conduct one's self according to the terms of a lawful contract."

This argument is forfeited for lack of supporting legal authority. (*In re Champion* (2014) 58 Cal.4th 965, 986.)

It is also forfeited because even in his reply brief Hart does not address, among other things, the court's various adverse credibility findings against him that might support the malice finding, including but not limited to Hart's incredible testimony of Janis' purported modification agreement that "seem[ed] to grow" as trial progressed to "includ[e] every term that would be necessary to make a finding that there was not a breach of fiduciary duty." (See *Verrazono*, 50 Cal.App.5th at p. 653.)

d.

The court awarded Sanchez $1.5 million in punitive damages.

Hart claims the court based this award on evidence his home was worth $2.3 million with $1.9 million in debt against it, as "[n]o other evidence was submitted." He contends the punitive damages award is "excessive" and "not supported by the evidence admitted at trial."

16

Once again, Hart provides no supporting legal authority, and thus he forfeits the issue. (*In re Champion*, 58 Cal.4th at p. 986.)

In response to Hart's claim that "[n]o other evidence was submitted" aside from the value of and debt against his home, Sanchez points to Hart's testimony that his law practice averages a monthly income of about $25,000 and he owns a $125,000 airplane. Hart neither addresses this evidence nor provides any argument on punitive damages in his reply brief. For this additional reason, the point is forfeited. (*Verrazono*, 50 Cal.App.5th at p. 653.)

2.

The court found Hart converted the Sanchezes' money for his own use, including using Sanchez money from his trust account to write checks for "unsupported costs reimbursements." Hart disputes this finding because "the entire expense history was audited" by his expert, and her uncontested testimony was that "all case expenses were proper and accounted for." We conclude substantial evidence supports the court's finding.

First, it is not clear any prejudice resulted from this purportedly erroneous finding because the court also found Hart converted money by taking excessive attorney fees, a finding Hart has not met his burden to overcome on appeal. Even after Sanchez points out how Hart "does not include any argument and/or analysis of facts to establish the purported errors were prejudicial," Hart does not explain or provide legal support for why succeeding on this claim would change the judgment's outcome. That Hart does not affirmatively show prejudice is reason enough to affirm. (*Century Surety Co.*, 139 Cal.App.4th at p. 963.)

Second, Hart does not address how the court "distrust[ed]" the "weaker" evidence his expert relied on as to costs, a point Sanchez raises in his responding brief.

Third, a witness testified about several checks Hart wrote unrelated to the Sanchezes, including some made payable to himself, that came out of his trust account at a time it held almost exclusively Sanchez funds. This substantial evidence suffices to support the court's finding as to unsupported cost reimbursements.

Hart disputes that the checks came from "Sanchez money" and instead explains they were expenses from his "separate cost advance account funded by the lien satisfaction disbursement." As best we can tell, Hart is referring to a lien he claims Janis granted him against the money that had been deposited in his trust account as part of her purported modification to the retainer agreement. Yet again, however, Hart does not account for the court's conclusion that his testimony about this "purported modification" was "not credible." In addition, he cites to testimony the court struck. Finally, to the extent Hart identifies contradictory evidence, it makes no difference because contradicted evidence suffices under substantial evidence review. (*Bowers*, 150 Cal.App.3d at pp. 873-874.)

III.

We affirm the judgment.  Sanchez is entitled to recover appellate costs. (Cal. Rules of Court, rule 8.278(a)(1).)


CASTILLO, J.

WE CONCUR:


IRION, Acting P. J.


BUCHANAN, J.