Filed 4/17/26  Marriage of Lerman CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re the Marriage of CELINE and MIKHAEL Y. LERMAN. | H053267 (Santa Clara County Super. Ct. No. 22FL000408) |
| CELINE E. LERMAN, Respondent, v. MIKHAEL Y. LERMAN, Appellant. | |

Appellant Mikhael Y. Lerman appeals from a final judgment of dissolution of marriage to respondent Celine E. Lerman, arguing that the trial court committed multiple errors in its adjudication of property issues and violated his due process rights.  Ms. Lerman moves to dismiss the appeal based on Mr. Lerman's noncompliance with the California Rules of Court[1] and separately seeks sanctions on the same grounds and for pursuing a frivolous appeal.  We deny the motion to dismiss and request for sanctions, but we affirm the judgment.

---

[1] Subsequent undesignated references to rules of court are to the California Rules of Court.

# I. FACTUAL AND PROCEDURAL BACKGROUND

## A. *The Trial Court Proceedings*

Mr. Lerman elected to proceed with an appendix pursuant to rule 8.124. The record on appeal is limited to the judgment of dissolution of marriage filed May 22, 2025, the court's minute order dated April 3, 2025, various documents submitted to the trial court, and the register of actions.[2] Our recitation of the factual and procedural background is drawn primarily from the parties' 45-page judgment.

Mr. Lerman and Ms. Lerman were married in October 1990 and separated in February 2023. Ms. Lerman filed her petition for dissolution of marriage without minor children in February 2022, and Mr. Lerman filed his response shortly thereafter. Mr. Lerman represented himself throughout the trial proceedings, and Ms. Lerman was represented by counsel. Based on the register of actions, Mr. Lerman filed multiple requests for orders in the trial court throughout 2022 and 2023, including two requests seeking to hold Ms. Lerman in contempt of court. None of these filings appear in the appendix.

---

[2] We do not consider the vast majority of documents in Mr. Lerman's 210-page appendix because they were not presented at trial or are dated after the notice of appeal was filed. Although Mr. Lerman appears to have filed various documents as part of "declarations" in the trial court, there is no indication that these declarations were a part of any of the trial proceedings at issue. Indeed, Ms. Lerman argues that none of the documents in Mr. Lerman's appendix were presented at trial, and Mr. Lerman has not shown otherwise. (*Pulver v. Avco Fin. Servs.* (1986) 182 Cal.App.3d 622, 632 (*Pulver*) ["documents not before the trial court cannot be included as part of the record on appeal and thus must be disregarded as beyond the scope of appellate review"].) This includes Exhibit HA, discussed at the oral argument on this appeal, which is attached to a freestanding declaration filed in the trial court, but which we are unable to determine was actually offered for consideration by the trial court. (See *In re Marriage of Shimkus* (2016) 244 Cal.App.4th 1262, 1265 [trial court "did not err when it refused to consider . . . declarations that were never offered into evidence"].) Filed declarations are "not automatically in evidence." (*Id.* at p. 1271.) We also do not consider Mr. Lerman's hyperlinks to additional documents not included as part of the 210-page appendix that he filed on August 13, 2025—these hyperlinked documents are not properly a part of the record on appeal.

The trial on all issues proceeded on April 5, 2023, September 15, 2023, and April 3, 2025. The trial court heard testimony from the parties on the first and second days of trial and made findings and orders related to the date of separation, property division, and each party's reimbursement claims.

In July 2023, between the first and second days of trial, Ms. Lerman sought to have Mr. Lerman declared a vexatious litigant, and on September 19, 2023, after the second day, the trial court entered an order declaring him as such.

In October 2024, the case was reassigned to a different judicial officer, and the trial court set a status conference. Mr. Lerman filed an objection to the newly assigned judicial officer, asserting she was the third female judge assigned to the case "in a row" and alleging the judge was a judicial mentor for one of the attorneys at Ms. Lerman's counsel's firm.

At the status conference in December 2024, in the presence of the parties, the trial court set the last day of trial for April 3, 2025. Ms. Lerman changed counsel in early 2025.

When trial resumed on April 3, 2025, Mr. Lerman failed to appear, and the court found his absence was "on purpose." The court recited the events from that morning as follows: "At 7:16 a.m. on April 3, 2025, [Mr. Lerman] electronically sent to the court and counsel his declaration claiming that this court has no jurisdiction over this matter, that he does not recognize the authority of this court, and that he refuses to participate further in this matter before this court. . . . [Mr. Lerman] then failed to appear at all or call the court on April 3, 2025." The court found Mr. Lerman had actual notice of the trial date and proceeded without him. The court admitted evidence from Ms. Lerman, made

3

additional findings and orders, and modified some of its prior orders issued after the first and second days of trial.[3]

The court filed the final judgment on May 22, 2025, which also included the findings and orders from the first and second days of trial.

### B. Relevant Portions of the Judgment

We recite only those portions of the judgment related to the issues Mr. Lerman raises on appeal.

The parties owned three real properties on three streets in San Jose, California: Cherry Avenue, Settle Avenue, and Booksin Avenue. On the first day of trial, Mr. Lerman testified that he contributed separate property funds toward the acquisition of all three properties. The court found "[n]o documents were provided to the court nor was [Mr. Lerman's] testimony specific in any way as to a tracing of the funds from a separate property source into [each] property." The court denied his separate property claims. Ms. Lerman asserted a reimbursement claim for funds she contended came from a separate property source to remodel Booksin Avenue. The trial court also denied her claim for lack of proof.

---

[3] The record does not reflect the reason for the approximately 18-month interval between the second and third days of trial; nor does it include the reason why the trial court made interim findings and orders throughout the trial. Mr. Lerman has not raised this as an issue on appeal, and we therefore do not address it. The record does reflect that, after the second day of trial, the case was reassigned to a different judge who then finished the trial and entered the judgment. Mr. Lerman does not assert that he was entitled to have the same judge complete the trial. (See Fam. Code, § 2330.3 [same judicial officer through final judgment "to the greatest extent possible"]; *European Beverage v. Superior Court* (1996) 43 Cal.App.4th 1211, 1213 [a party is entitled to have the same judge try all portions of a bifurcated trial].) Rather, he argued that "[i]t would be fair to assign now, a male judge after having assigned 2 female judges in a row." Thus, even if we assume *European Beverage* applies in a non-bifurcated trial such as this one, Mr. Lerman has forfeited any claim of error based on that decision. (*Pizarro v. Reynoso* (2017) 10 Cal.App.5th 172, 181-183.)

As to Cherry Avenue, the trial court initially ordered, based on the parties' agreement, that the property "be jointly owned by them and that the income and liabilities . . . will continue to be shared equally by them until further order of the court." As to Settle Avenue and Booksin Avenue, the court ordered the parties to retain a joint appraiser to appraise the real properties and reserved jurisdiction to value and allocate the properties.

After the second day of trial, the court awarded Settle Avenue to Ms. Lerman at a net value of $1,400,000 as her separate property and awarded Booksin Avenue to Mr. Lerman at a net value of $1,750,000 as his separate property. The court ordered Mr. Lerman to make an equalization payment of $175,000 to Ms. Lerman within 60 days and, if it was not paid within 90 days, "then Booksin [Avenue] will be listed for sale and sold."

After the third day of trial, the court awarded Cherry Avenue to Ms. Lerman at a value of $1,700,000 as her separate property. The court determined Mr. Lerman's equity interest in the property was equalized by the overall division of the parties' assets, pension and retirement accounts, and amounts owed by him to Ms. Lerman for her reimbursement claims.

The court found that the parties also owned real property located on Rue Courat in Paris, France. The judgment states, "The parties agreed at trial that this property was purchased in 2019 and that the source of funds for the purchase of the property was entirely community."

Mr. Lerman had argued on the first day of trial that the parties' interests in the property should be allocated based on their respective contributions during marriage. He calculated that "his earnings during the marriage contributed 74% of the purchase price" and therefore he should be awarded a 74 percent interest in the property, with Ms. Lerman receiving the remaining 26 percent interest. The trial court denied his claim, stating "there is no dispute that [Mr. Lerman's] earnings during the marriage" were

5

community property. The court then reserved jurisdiction "over the valuation and distribution of this asset pending further input from the parties."

After the last day of trial, the court ordered that Ms. Lerman "shall be allowed to purchase [Mr. Lerman's] 25% share [of Rue Courat], which is [Mr. Lerman's] total interest." The court ordered Ms. Lerman to appraise the property and, "[u]pon tendering payment" to Mr. Lerman for "his 25% share," his name shall be removed from title, and he shall "no longer have any right, title, interest, or claim to rents, equity, or profits."

Mr. Lerman had also claimed on the first day of trial that there was a second property in France located on Rue de Maubeuge that Ms. Lerman did not disclose. He requested the court to determine the character and disposition of Rue de Maubeuge. Ms. Lerman testified that the property belonged to her father's estate, and her father was still alive. The judgment states, "A review of Trial Ex. F does not support [Mr. Lerman's] claim that [Ms. Lerman] has a current ownership interest in this property and that [Ms. Lerman] will receive an ownership interest 'upon the death of the donor[.]' " The trial court found that Mr. Lerman failed to prove Ms. Lerman's "present ownership interest." It concluded that Rue de Maubeuge was "not an asset subject to characterization or division by th[is] court."

Finally, the court found that Mr. Lerman "made it exceptionally difficult to adjudicate this case," "engaged in behavior that served to confuse and frustrate accounting, tracing and equal division." Mr. Lerman "lack[ed] . . . cooperation with disclosure requirements and disregard[ed] . . . court orders[,]" and had previously been sanctioned in the amount of $75,000. The court further found that "despite prior court orders and decisions, [Mr. Lerman] has a proven history of failing to execute appropriate deeds and documents accordingly." The court therefore appointed the clerk of the superior court as elisor, to sign necessary documents on Mr. Lerman's behalf when requested by Ms. Lerman.

After the last day of trial, but before the court filed the final judgment, Mr. Lerman filed a premature notice of appeal on May 12, 2025. On our own motion, we took judicial notice of the May 22, 2025 judgment and deemed Mr. Lerman's notice of appeal filed as of that date.

## II. DISCUSSION

Mr. Lerman asserts the following errors: (1) the trial court failed to account for Ms. Lerman's alleged nondisclosure of two real properties in Paris; (2) the trial court ignored his tracing of separate property funds to the acquisition and improvement of Cherry Avenue, Settle Avenue, and Booksin Avenue; (3) Ms. Lerman improperly effectuated a title transfer of Cherry Avenue during the 60-day appeal period; (4) the allocation of his interest in Rue Courat at 25 percent was inconsistent with prior determinations and based on Ms. Lerman's misrepresentations; and (5) various "structural defects" occurred throughout the underlying proceedings that violated his due process rights. Ms. Lerman responds that Mr. Lerman filed a frivolous appeal, and she moves to dismiss the appeal and requests monetary sanctions of $135,000.

We address the parties' contentions in the following order: Ms. Lerman's motion to dismiss, Mr. Lerman's arguments on appeal, and Ms. Lerman's motion for sanctions.

### A. Motion to Dismiss or Strike Mr. Lerman's Brief and Appendix

Ms. Lerman contends that the appeal should be dismissed because Mr. Lerman failed to provide a complete copy of the judgment to this court. Alternatively, she requests we strike his brief and appendix for failure to comply with the appellate rules governing the format and content of such documents.

This court previously ordered Mr. Lerman to provide a filed copy of the judgment. Mr. Lerman then submitted a letter to the clerk stating, "please find attached a filed copy of the judgment entered by the trial court," and attached a copy of a 10-page document. The pages attached to Mr. Lerman's submission contained only the court's findings and

orders from the last day of trial and omitted the findings and orders from the first and second days of trial. Ms. Lerman thereafter filed a complete copy of the 45-page judgment. She alleges that Mr. Lerman intentionally provided an incomplete copy of the judgment to this court because he knew the other pages contained information fatal to his arguments on appeal. Mr. Lerman neither affirms nor denies this allegation; he responds only that "this Court has already resolved th[o]se concerns."

Although Mr. Lerman's failure to comply with the court's order was problematic—for the reasons we address below in relation to sanctions—we deny Ms. Lerman's motion to dismiss in light of the "policy of the courts to encourage hearings of appeals on their merits." (*Peak v. Nicholson* (1943) 61 Cal.App.2d 355, 359 ["dismissal on technical grounds is not favored where it does not appear that the delay caused material detriment to the respondent"].) We likewise deny Ms. Lerman's alternative request to strike the opening brief and appendix, but we disregard any factual assertions or exhibits based on information not properly in the record on appeal. (*Falcon v. Long Beach Genetics, Inc.* (2014) 224 Cal.App.4th 1263, 1267.)

### B.     Mr. Lerman's Arguments on Appeal

#### 1.     The Standard of Review

We review the trial court's judgment dividing marital property for abuse of discretion. (*In re Marriage of Sivyer-Foley & Foley* (2010) 189 Cal.App.4th 521, 526.) We review the trial court's factual findings under the substantial evidence standard. (*Ibid*.) In determining whether there is such evidence, we review the record "in the light most favorable to the prevailing party, resolve all conflicts in the evidence in favor of the ruling or judgment being reviewed, and indulge all reasonable inferences" in support of the trial court's findings. (*Schneer v. Llaurado* (2015) 242 Cal.App.4th 1276, 1286-1287.) "A judgment or order of a lower court is presumed to be correct on appeal, and all

8

intendments and presumptions are indulged in favor of its correctness." (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133.)

Whether a litigant was deprived of due process is a question of law that we review de novo. (*In re Marriage of Siegel* (2015) 239 Cal.App.4th 944, 953.)

### 2. *The Omitted Paris Properties*

Mr. Lerman argues that the trial court failed to determine the character and division of two residential properties located on Rue de Maubeuge and Rue Oberkampf in Paris, France. He claims that Ms. Lerman failed to disclose her interests in these properties before trial, and when he attempted to present these issues, the trial court prevented him from doing so and ignored his requests for "a full and fair review."

As to the Rue de Maubeuge property, Ms. Lerman points out that the trial court addressed this property on the first day of trial, as reflected in the judgment. On April 5, 2023, the trial court heard Mr. Lerman's arguments and testimony regarding Rue de Maubeuge, reviewed an exhibit, and determined that Ms. Lerman did not have a present ownership interest in the property. Mr. Lerman offers no explanation for his failure to address the trial court's findings in his opening brief. Instead, he responds that the trial court had previously ruled in February 2023 that its determination was "without prejudice," and that the court relied on inadmissible hearsay and ignored documents he now includes in his appendix.

This argument is without foundation. The trial court's alleged "without prejudice" February 2023 ruling is not a part of the record on appeal,[4] nor do we have a court reporter's transcript or other adequate record from that proceeding. Even if the court had made such a ruling in February 2023, the record reflects that the court subsequently

---

[4] In his opening brief (but not in his appendix), Mr. Lerman included a hyperlink to an exhibit "FY." We do not consider it, as it is not part of the record on appeal. Mr. Lerman's briefs also link or refer to several other documents that are not a part of his appendix.

9

addressed the issue at trial and issued findings in April 2023, superseding any ruling from two months earlier. Similarly, Mr. Lerman has not shown that he raised a hearsay objection at trial or presented to the trial court the documents upon which he now seeks to rely. (*Duronslet v. Kamps* (2012) 203 Cal.App.4th 717, 726 [hearsay objection forfeited]; *Pulver*, *supra*, 182 Cal.App.3d at p. 632.)

As to the Rue Oberkampf property, although it is not referenced in the judgment, Mr. Lerman has not provided a sufficient record to demonstrate error. He has not identified anything from the record of the prior proceedings to show that the trial court impaired his efforts to raise this issue during any of the three days of trial. It is Mr. Lerman's burden to provide this court with an adequate record on appeal. (*Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295; *Calhoun v. Hildebrandt* (1964) 230 Cal.App.2d 70, 72.) An inadequate record "will frequently be fatal to a litigant's ability to have his or her claims of trial court error resolved on the merits by an appellate court." (*Jameson v. Desta* (2018) 5 Cal.5th 594, 609.) In other words, " '[f]ailure to provide an adequate record on an issue requires that the issue be resolved against [the appellant]. [Citation]' " (*Ibid.*, fn. omitted.)

Additionally, Mr. Lerman has not demonstrated prejudice. (See Cal. Const., art. VI, § 13 [reversal not warranted unless alleged error resulted in a miscarriage of justice]; (*Property Reserve, Inc. v. Superior Court* (2016) 6 Cal.App.5th 1007, 1020 [the appellate court cannot presume prejudice].) To the extent that Rue Oberkampf was a community asset omitted from the judgment, and the trial court did not already adjudicate the issue, the trial court retains jurisdiction under Family Code section 2556 to do so. (*In re Marriage of Huntley* (2017) 10 Cal.App.5th 1053, 1060 [section 2556 provides trial courts with continuing jurisdiction to adjudicate omitted community property assets or liabilities].)

10

### 3. *Tracing of the Real Properties in the United States*

Mr. Lerman argues that the trial court ignored his evidence showing the Cherry Ave, Booksin Avenue, and Settle Avenue properties were all acquired with and improved by his earnings and separate property rental income. Therefore, the trial court erred when it awarded Cherry Avenue and Settle Avenue to Ms. Lerman.

Again, Mr. Lerman's arguments are not consistent with the record. In the judgment, the trial court specifically addressed the proof offered by Mr. Lerman regarding his separate property claims for each of the real properties and ultimately rejected that proof. He now suggests we reexamine and reweigh the evidence, which is not within our authority on appeal. (*In re Marriage of Arceneaux*, supra, 51 Cal.3d at p. 1133; *Jennifer K. v. Shane K.* (2020) 47 Cal.App.5th 558, 579 [" ' "We have no power on appeal to judge the credibility of witnesses or to reweigh the evidence." ' "].) Moreover, in the absence of a record of the oral proceedings or a complete record of the trial, Mr. Lerman has failed to demonstrate that he raised the claims and evidence he now asserts on appeal. (*Foust v. San Jose Construction Co., Inc.* (2011) 198 Cal.App.4th 181, 187 ["Without a reporter's transcript or the exhibits presented at trial we cannot undertake a meaningful review of [appellant's] argument on appeal."].) Accordingly, we discern no error.

### 4. *The Enforcement of the Cherry Avenue Order*

Because of Mr. Lerman's prior "proven history" of noncompliance, the trial court authorized and appointed the clerk of the superior court to sign documents on Mr. Lerman's behalf to effectuate the court's award of Cherry Avenue to Ms. Lerman. On April 5, 2025, Ms. Lerman executed an interspousal transfer deed to transfer title of Cherry Avenue to herself as her sole and separate property. The clerk of the superior court executed the deed on behalf of Mr. Lerman.

Mr. Lerman argues that Ms. Lerman improperly executed the deed within the "60-day appeal period," and that the trial court had no basis to appoint the elisor because he "had been actively participating in the case." Both of these arguments lack merit.[5]

First, although Mr. Lerman had a right to appeal the judgment within 60 days, there is no evidence that enforcement of the judgment was stayed during those 60 days. Code of Civil Procedure section 917.4 provides: "The perfecting of an appeal shall not stay enforcement of the judgment or order in the trial court if the judgment or order appealed from directs the sale, conveyance or delivery of possession of real property . . . unless an undertaking in a sum fixed by the trial court is given." Mr. Lerman has not shown that he complied with the statute to obtain a stay of enforcement of the trial court's judgment. (*In re Marriage of Falcone & Fyke* (2012) 203 Cal.App.4th 964, 988 [undertaking required to stay enforcement of family law judgment related to real property conveyance].) Thus, he has not demonstrated error in the execution of the transfer deed for Cherry Avenue.

Second, a court "typically appoints an elisor to sign documents on behalf of a recalcitrant party in order to effectuate its judgments or orders, where the party refuses to execute such documents." (*Blueberry Properties, LLC v. Chow* (2014) 230 Cal.App.4th 1017, 1020.) In family law proceedings, the court may enforce its judgment by "any other order as the court in its discretion determines from time to time to be necessary." (Fam. Code, § 290; see also Code. Civ. Proc., § 128, subd. (a)(4) [courts have power to "compel obedience to its judgments, orders, and process"].) Here, the record shows that Mr. Lerman engaged in behavior to frustrate resolution of the matters before the court, had a history of failing to comply with court orders to execute necessary documents, and

---

[5] Mr. Lerman filed a petition for writ of supersedeas to stay execution of the orders related to the real properties, including Cherry Avenue, pending the appeal. We denied the petition.

12

disregarded prior court orders.  The trial court's appointment therefore does not exceed the bounds of reason, and the trial court did not abuse its discretion in issuing the order.

### 5. The Other Paris Property: Rue Courat

The court found that the Rue Courat property was purchased during marriage with entirely community funds.  At the conclusion of trial, the court ordered Ms. Lerman to appraise the property and, upon her tendering payment to Mr. Lerman for his "25% share" of the property, Mr. Lerman's name shall be removed from title to the property, and he will have no right to title, interest or claim to the property.

Mr. Lerman challenges the order on the basis that Rue Courat "was to be divided according to our respective contributions—74% to me and 26% to her."  He argues that the trial court failed to evaluate his "tracing evidence,"[6] and, on the final day of trial, Ms. Lerman made incorrect representations to the court by "revers[ing] the actual percentages, claiming she contributed 74% and Mr. Lerman only 26%."  Again, the record is at odds with Mr. Lerman's description of the proceedings.  He has not shown any evidence from the record that the court determined the division of Rue Courat to be 74 percent to him and 26 percent to Ms. Lerman, or vice versa.  Instead, the record shows the court denied his method of allocation of interests after the first day of trial because it found his earnings during marriage to be entirely community property.

The minute order from the last day of trial indicates that as to Rue Courat, Ms. Lerman stated "she does not wish to relinquish her 25% share of the property and wishes to buy out [Mr. Lerman's] 25% share."  The record contains no evidence that she made the representations Mr. Lerman claims she made regarding a 74/26 apportionment.  Although the record does not explain why the court ultimately determined the parties' collective interest in Rue Courat to be 50 percent instead of 100 percent, we do not

---

[6] As stated above, without a record of the oral proceedings from trial, Mr. Lerman has not met his burden to show that he provided any such tracing evidence to the trial court.  Accordingly, he has forfeited this claim.

13

presume error on a silent record. (*569 East County Boulevard LLC v. Backcountry Against the Dump, Inc.* (2016) 6 Cal.App.5th 426, 434, fn. 9.)

### 6. *Structural Defects[7]*

Mr. Lerman argues that the case was rife with attorney misconduct and judicial irregularities that undermined judicial impartiality. For example, he asserts that the trial court's vexatious litigant designation impaired his ability to obtain a fair hearing, and that the court improperly proceeded with the third day of trial in his absence, resulting in a "default" judgment against him. He argues that these structural defects violated his due process rights. Based on our review of the record, we discern no error.

"It is a fundamental concept of due process that a judgment against a defendant cannot be entered unless he was given proper notice and an opportunity to defend. [Citations.]." (*In re Marriage of Lippel* (1990) 51 Cal.3d 1160, 1166.) "Due process is a flexible concept, and must be tailored to the requirements of each particular situation. . . . However, the rudiments of fair play include notice, an opportunity to respond, and a hearing." (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 654.)

Mr. Lerman asserts the following structural defects violated his due process rights: Threatening correspondence from Ms. Lerman's counsel to him claiming attorney's fees to be paid and incurred as a result of his conduct, and her intent to seek sanctions if he continued to engage in such conduct; purported ex parte communications in April 2023 between the original trial judge and Ms. Lerman's former counsel; and alleged proof of judicial partiality based on the reassignment of only female judicial officers to the case in 2024 and the withdrawal of Ms. Lerman's former counsel from the case in 2025.

---

[7] Mr. Lerman's brief also contains a list of his six proposed policy changes to ensure impartial judgments. We need not address his policy proposals as they are beyond the scope of this court's function, which is to adjudicate claims of error. (*County of San Diego v. State of California* (2008) 164 Cal.App.4th 580, 597 [court's role is to decide what the Legislature has done, not what it should have done].)

14

Mr. Lerman has not met his burden to demonstrate a violation of his due process rights. The communications from Ms. Lerman's counsel do not constitute "extortion" or "threats," as he contends. There is no evidence in the record of any ex parte communication between any judge and counsel in this case.[8] Mr. Lerman concedes that he does not know the reasons why the case was reassigned to a different judge or why Ms. Lerman's counsel withdrew. His speculation as to why they did so is not evidence. There is no evidence in the record regarding any "personal relationship" between the original trial judge and Ms. Lerman's former counsel, nor is there any basis for inferring that their departures from the case had anything to do with any purported relationship.

As for Mr. Lerman's arguments regarding the trial court's order designating him a vexatious litigant shortly after the second day of trial, the law is well settled that the vexatious litigant statutes are constitutional and do not deprive vexatious litigants of due process of law. (*Fink v. Shemtov* (2010) 180 Cal.App.4th 1160, 1170 [citing numerous cases].) Without providing any record citation, Mr. Lerman contends that his vexatious litigant designation granted Ms. Lerman's "legal team unchecked freedom . . . to violate court orders, seize property, and disregard" prior arrangements. Again, Mr. Lerman does not show any evidence from the record to support these contentions. He has thus forfeited these arguments on appeal.

Moreover, the register of actions in this case shows that even after the vexatious litigant designation, Mr. Lerman was not denied access to the court and continued to file

---

[8] The appendix includes an unfiled document showing an email chain dated April 23, 2023 between the former judge, Ms. Lerman's former counsel, and Mr. Lerman regarding the appointment of a joint real estate appraiser. Even if we were to consider this document, we note that Mr. Lerman is included in the correspondence. " 'An ex parte communication is one where a party communicates to the court *outside* the presence of the other party.' [Citations.]" (*In re Marriage of Spector* (2018) 24 Cal.App.5th 201, 215.) Additionally, the email from the judge consisted of the following two sentences: "The court appoints David Diettrich as the real estate appraiser. Whoever suggested Mr. Diettrich is directed to prepare the order of appointment." Thus, we discern no evidence of ex parte communications nor judicial bias based on Mr. Lerman's allegations.

numerous declarations in the trial court. The record also shows that in December 2024, he received notice that the third day of trial would commence on April 3, 2025. On the morning of April 3, he sent an electronic document to the court stating his position that the court has "no jurisdiction over this matter, that he does not recognize the authority of [the trial] court, and that he refuses to participate further in this matter before [the] court." The record thus shows that Mr. Lerman voluntarily declined to participate at trial. Having given Mr. Lerman notice of the trial, the trial court was authorized to proceed in his absence. (Code Civ. Proc., § 594, subd. (a); see also *Colony Bancorp of Malibu, Inc. v. Patel* (2012) 204 Cal.App.4th 410, 412 [the court did not violate the defendant's due process rights by proceeding with trial when the defendant and his counsel failed to return after the lunch break].) Accordingly, Mr. Lerman has not met his burden to show that he was denied due process in the underlying proceedings.

In summary, Mr. Lerman has not met his burden of showing that the trial court abused its discretion in the adjudication of the issues in the judgment. Based on our independent review of the record, we also discern no violation of Mr. Lerman's due process rights.

### C. Ms. Lerman's Motion for Sanctions

Ms. Lerman filed a separately noticed motion requesting that we issue $135,000 as sanctions against Mr. Lerman, including $25,000 "to deter this abuse in the future" and $15,000 to "compensate the court's staff." Although the motion includes a brief declaration of counsel under rule 8.276(b), the declaration is short on detail and consists primarily of vague estimates.

When it appears that an appeal is "frivolous or taken solely for delay," Code of Civil Procedure section 907 authorizes appellate courts to "add to the costs on appeal such damages as may be just." Rule 8.276(a) specifically permits the appellate court to impose sanctions on a party for "(1) Taking a frivolous appeal or appealing solely to

cause delay; [¶] (2) Including in the record any matter not reasonably material to the appeal's determination; [¶] (3) Filing a frivolous motion; or [¶] (4) Committing any other unreasonable violation of these rules."  Rule 8.124(g) further provides that "Filing an appendix constitutes a representation that the appendix consists of accurate copies of documents in the superior court file.  The reviewing court may impose monetary or other sanctions for filing an appendix that contains inaccurate copies or otherwise violates this rule."

"Whether to impose appellate sanctions is a matter within [the reviewing court's] discretion.  [Citation.]."  (*Citizens for Amending Proposition L v. City of Pomona* (2018) 28 Cal.App.5th 1159, 1194.)  Our high court has cautioned that sanctions "should be used most sparingly to deter only the most egregious conduct[;] . . . [a]n appeal that is simply without merit is *not* by definition frivolous."  (*Marriage of Flaherty*, *supra*, 31 Cal.3d at pp. 650-651.)

That Mr. Lerman is representing himself on appeal is no excuse for disregarding legal process.  (*Leslie v. Board of Medical Quality Assurance* (1991) 234 Cal.App.3d 117, 121 [sanctions in the amount of $10,000 imposed against self-represented litigant for frivolous appeal].)  It does not exempt him from compliance with the rules set forth above.  We must treat a party who acts as his own attorney like any other party and hold him to the rules of procedure.  (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1247.)

This appeal "comes right up to the line of sanctionable conduct."  (*McCluskey v. Henry* (2020) 56 Cal.App.5th 1197, 1208.)  Mr. Lerman failed to follow any of the appellate rules to provide an adequate record on appeal.  Throughout his briefs, he included hyperlinks to external files stored in databases inaccessible to this court rather than include such documents in the appendix.  Mr. Lerman included several documents in his appendix that were not accurate copies of documents in the superior court file.  His most concerning conduct, however, was providing this court with an incomplete copy of

17

the judgment which he represented to this court, under penalty of perjury, to be "a filed copy of the judgment entered by the trial court on May 22, 2025."

Nonetheless, having reviewed the record and arguments of the parties, we conclude that the threshold for imposing sanctions has not been reached in this case. While we do not interpret Mr. Lerman's actions as an attempt to deceive this court deliberately, at least in this instance, he should understand that future violations of the rules may subject him to monetary sanctions.

### III. DISPOSITION

The judgment is affirmed. Ms. Lerman shall recover her costs on appeal. (Rule 8.278(a)(2).)

_____

CHUNG, J.*

WE CONCUR:

_____

GREENWOOD, P. J.

_____

LIE, J.

_Lerman v. Lerman_
H053267

---

* Judge of the Santa Clara County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.